LEROY DULIN, BY HIS GENERAL GUARDIAN THOMAS L. DULIN v. BYNUM W. FAIRES AND WIFE, MARTHA S. FAIRES; WILLIAM HOWARD FAIRES, SR. AND WIFE, LOUISE K. FAIRES; RALPH L. FAIRES AND WIFE, RUTH E. FAIRES; E. RHYNE FAIRES, SR. AND WIFE, LOUISE C. FAIRES; WILMA F. BRAWLEY; DARRELL F. McKINLEY, SR. AND WIFE, MARY F. McKINLEY; FRANK W. FAIRES AND WIFE, VIOLA P. FAIRES; MAX HAMILTON, SR. AND WIFE, LILLIAN F. HAMILTON; MADELYN F. PHIPPS; AND EDITH F. McKINNEY AND HUSBAND, WESLEY R. McKINNEY.

(Filed 14 January, 1966.)

**1. Adverse Possession § 2—**

The use of a right of way across another's land must be under claim of right and be open and hostile and under definite boundaries in order to establish a right by prescription, but hostile use is simply use under such circumstances as to manifest and give notice that the use is being made under claim of right.

**2. Trial § 31—**

If defendant's evidence is insufficient to be submitted to the jury on an affirmative defense, the court may correctly direct a verdict against defendant on the issue, since defendant has the burden of proof thereon.

**3. Adverse Possession § 23—**

> The evidence in this case *held* sufficient to permit the jury to find that defendants had used the road in question substantially in the same location for any and all purposes incident to the use and enjoyment of their contiguous properties as the only means of access from their properties to a public road, and had done so for more than 20 years preceding the institution of the action, and that such use was adverse and under claim of right, and therefore a directed verdict based on the assumption that the evidence was insufficient to establish their right must be reversed.

APPEAL by defendants from *Brock, Special Judge,* January 4, 1965, Schedule "C" Civil Session of MECKLENBURG.

This action was instituted June 15, 1964, in behalf of Leroy Dulin by his son and general guardian, Thomas L. Dulin.

Leroy Dulin, referred to herein as plaintiff, suffered an incapacitating stroke on March 1, 1964 and thereafter was unconscious and unable to manage his affairs. Although living at the time of the trial, Leroy Dulin was unable to testify or attend.

Plaintiff alleged he owned a described tract of land in Crab Orchard Township, Mecklenburg County; that defendants claimed an interest therein adverse to plaintiff, namely, "a right to use, and to permit others to use, a private road or driveway across the aforesaid land from Plaza Road to the property of the defendants"; and that the asserted claim of defendants is and should be adjudged invalid and a cloud on plaintiff's title.

Defendants, in their joint answer, claimed "a right to use and permit others to use a road across the said land to and through the property of the defendants to the same extent as said road has been used for many years and up to the present time."

Defendants, by way of further answer and defense, asserted the right to use the road (1) because of adverse user by them and their predecessors in title for more than twenty years next preceding the institution of the action, or (2) on the ground that the road is a neighborhood public road.

Evidence was offered by plaintiff and by defendants.

The court submitted, and the jury answered under peremptory instructions in favor of plaintiff, the following issues: "I. Have the defendants and their predecessors in interest used the roadway over the plaintiff's land openly, notoriously and adversely for a continuous period of 20 years? ANSWER: No. II. Is the road mentioned and described in the pleadings a neighborhood public road? ANSWER: No."

The court entered judgment in which it was ordered, adjudged

and decreed "that the defendants have acquired no rights in and to the property of the plaintiff described in the Complaint by reason of the existence and use of the roadway across the plaintiff's property as described in the complaint," and in which the costs of the action were taxed against defendants.

Defendants excepted and appealed.

Leroy Dulin having died subsequent to the filing of the record on appeal, the First Union National Bank of North Carolina, as executor and trustee under the will of Leroy Dulin, deceased, in accordance with its motion, has been substituted by order of this Court as party plaintiff in the place and stead of Leroy Dulin.

*Fleming, Robinson & Bradshaw for plaintiff appellee.*

*Grier, Parker, Poe & Thompson and James Y. Preston for defendant appellants.*

BOBBITT, J.  It was stipulated at trial that Leroy Dulin owned in fee simple the tract of land described in the complaint and shown on Tax Map 63 of Crab Orchard Township as Lots 15 and 16, being the acreage shown on said map as within superimposed red lines and identified by superimposed red numeral "1." The record does not disclose when or from whom he acquired title. There was testimony his four maiden sisters lived on the property for many years and had a life interest therein; that the last of these sisters died in 1957; and that during the lifetime of his sisters and thereafter Leroy Dulin had control thereof.

Defendants allege they own various tracts of land adjoining Leroy Dulin's said land, having acquired title thereto by *mesne* conveyances from F. W. Faires; and that F. W. Faires had acquired title thereto by recorded deed dated October 31, 1930, from H. W. Johnston. There is no stipulation or record evidence as to what lands, if any, the defendants, individually or collectively, own. The said Tax Map 63, identified as plaintiff's Exhibit 2 and offered in evidence by plaintiff "for illustrative purposes only," shows an acreage within superimposed red lines and identified by superimposed red numeral "2." The acreage constituting Tract "2" is shown on said Tax Map 63 as ten separate parcels. The name(s) of one or more of the defendants, written in pencil by an unidentified person, appears on each parcel. Four of these parcels adjoin said Leroy Dulin land.

It was stipulated that said Tax Map 63 is "a reasonably accurate portrayal of the area within which the property in question lies." The area shown, which is near the Mecklenburg-Cabarrus line, is bounded on the south and east by Plaza Road Extension, on the

west by Hood Road and on the north by Rocky River Road. Tract "1," plaintiff's property, fronts on the north side of Plaza Road Extension. Tract "2," referred to in the evidence as the Miller, later the Faires property, is northeast of Tract "1." The property referred to in the evidence as the Smith property adjoins and is east of Tract "1" and adjoins and is south of Tract "2." The Hood Road is west and northwest of Tract "1" and of Tract "2."

There is no evidence, such as a map, survey or description as to the precise location of the road here involved. However, the evidence indicates there is no controversy as to where it is located on the surface of the earth. Two pencil lines, superimposed on said map by an unidentified person, indicate the general location thereof. These lines indicate a roadway extending from Plaza Road Extension across Tract "1" to a point on a line dividing Tract "1" and Tract "2."

It having been stipulated that Leroy Dulin owned in fee simple the property shown as Tract "1," the burden of proof was on defendants to establish their alleged legal right(s) to use the road across said land. The issues submitted to the jury were raised by defendants' further answers; and, as to each, the burden of proof was on defendants.

Pertinent legal principles, stated below, are well settled.

"The party claiming a right of way by prescription has the burden of proving the several elements essential to its acquisition. (Citations). Thus he must show, among other things, not only that a way over another's land was used for the requisite period, but also that such use was adverse or under a claim of right. (Citations). A mere permissive use of a way over another's land, however long it may be continued, cannot ripen into an easement by prescription. (Citations)." *Williams v. Foreman,* 238 N.C. 301, 77 S.E. 2d 499; *Henry v. Farlow,* 238 N.C. 542, 78 S.E. 2d 244, and cases cited.

"There must, then, be some evidence accompanying the user, giving it a hostile character and repelling the inference that it is permissive and with the owner's consent, to create the easement by prescription and impose the burden upon the land." *Boyden v. Achenbach,* 86 N.C. 397.

"The term adverse user or possession implies a user or possession that is not only under a claim of right, but that it is open and of such character that the true owner may have notice of the claim; *and this may be proven by circumstances* as well as by direct evidence." (Our italics.) *Snowden v. Bell,* 159 N.C. 497, 75 S.E. 721.

To establish that the use is "hostile" rather than permissive, "it is not necessary to show that there was a heated controversy, or a manifestation of ill will, or that the claimant was in any sense an

enemy of the owner of the servient estate." 17A Am. Jur., Easements § 76, p. 691. A "hostile" use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right.

The court instructed the jury to answer the issues, "No," if they found the facts to be as all the evidence tended to show. In so doing, the court held the evidence, when considered in the light most favorable to defendants, was insufficient to support a verdict in their favor. If this were true, the court should have directed a verdict against defendants, who had the burden of proof. See "Directed Verdict and Peremptory Instruction," 2 McIntosh, North Carolina Practice and Procedure, Second Edition, § 1516, 1964 Supplement. Decision turns on the sufficiency of the evidence for jury consideration with reference to defendants' alleged prescriptive right, the subject of the first issue.

The evidence, when considered in the light most favorable to defendants, tends to show the facts narrated below.

The subject road extends from what is now Plaza Road Extension, to and beyond the Dulin homeplace and into the property now owned by defendants and referred to as the Faires property. This road, a single lane, unpaved road, was in existence substantially as now located prior to 1903 and has been in existence and use since then.

The property now referred to as the Faires property was formerly known as the Miller property. Miller, who lived there and operated a store near his home, died about 1919. The public traded at the Miller store. Another road to the Miller homeplace and store from what is now Plaza Road Extension crossed the Smith property. There were other ways of access to and from the Miller homeplace-store area from other directions, including what was the Pine Hill School site near the Hood Road.

The subject road was not maintained by the State, county or other public authority. Miller did some work on the subject road.

There is no evidence as to the ownership, occupancy and use of what is now called the Faires property from Miller's death in 1919 until 1930.

The Faires family, father (presumably F. W. Faires), mother and ten children, went into possession in November 1930. The parents lived in the home on this property until death. In the latter part of 1959 or the early part of 1960, the father "was quite ill." The mother died in 1962. At some unidentified time the Faires property was divided into the ten 10-acre tracts now owned by defendants.

When the Faires family went into possession in 1930, the subject

road stopped at the Faires homeplace. It was the only road then providing access to the Faires property from a public road. This was true until 1959 when a new (alternative) means of access from the Plaza Road Extension to the Faires property was acquired.

From 1930, the subject road, which passed in front of the Dulin homeplace, was used continuously by the Faires family and persons with whom they had dealings. Members of the Faires family, father and sons, worked and maintained the subject road during this period by dragging it, cleaning out the ditches, and by hauling and placing dirt and gravel on it, and generally keeping it in usable condition.

From 1942 to 1947 E. Rhyne Faires, one of the sons, operated a dairy on the Faires homeplace. Trucks from dairy companies used the subject road to pick up the milk produced at the Faires dairy.

In 1959, a lake was constructed on the Faires property. Later, it was opened to the public for fishing. A sign reading, "Fishing $1.00 per day, except Sunday," was erected on Plaza Road Extension at or near the entrance to the subject road. The Faires parents received fees amounting to about $300.00 per year from this enterprise. Patrons used the subject road as a means of access to the lake on the Faires property.

On one occasion (no date given), the father and William Howard Faires, Sr., one of the sons, were working on the subject road near the Dulin barn, that is, between Plaza Road Extension and the Dulin homeplace. Leroy Dulin parked his car on Plaza Road Extension and walked to where the work was in progress. Leroy Dulin, when asked to assist the Faires in maintaining the subject road, answered: "The road belongs to you; you keep it up."

Until May, 1963, permission to use the subject road was not requested by the Faires family. The Dulins did not protest or interfere with the various uses and actions of the Faires family in connection with the subject road. Relations between the Faires and Dulin families were friendly and cordial. In May, 1963, or shortly before, one of the Faires sons requested permission *to enlarge the entrance* from Plaza Road Extension into the subject road to facilitate the movement of mobile homes to a trailer park on the Faires property. Leroy Dulin refused this request, caused the subject road to be obstructed and denied defendants' right to the use thereof.

All the evidence tends to show the Faires family actually used the subject road substantially as now located, and for any and all purposes incident to their use and enjoyment of the Faires property, continuously, as their only means of access from their property to

---

the Plaza Road Extension, for more than twenty years next preceding the institution of this action. Moreover, the evidence, when considered in the light most favorable to defendants, was sufficient *to permit,* although not compel, a jury finding that such use was adverse and under claim of right. Hence, the first issue was for jury determination under appropriate instructions; and the court's instruction with reference thereto was prejudicial error.

We deem it unnecessary to discuss whether the evidence in the present record was sufficient to justify the submission of an issue as to whether the subject road is a neighborhood public road.

The verdict and judgment, in their entirety, are set aside and a new trial is awarded in respect of all issues raised by the pleadings and having support in the evidence.

New trial.