ROBIN CANNON AND CLARK D. WHITLOW, SR. AND WIFE, JO ANN C. WHITLOW, PLAINTIFFS v. GILBERT DAY AND WIFE, CONNIE DAY, GARY WOOD AND WIFE, CHERYL WOOD, AND RONALD JAMES EDWARDS AND WIFE, JANET MOORE EDWARDS, DEFENDANTS

No. COA03-704

(Filed 6 July 2004)

**1. Appeal and Error— appealability—denial of summary judgment**

The denial of summary judgment based on the sufficiency of the evidence is not reviewable following a trial.

**2. Easements— prescriptive—sufficiency of evidence**

The trial court did not err by denying defendants' motion for a directed verdict on a prescriptive easement claim where there was evidence that permission to use a farm lane was neither sought nor given, that plaintiffs had performed maintenance to keep the road passable, and that plaintiffs had used the lane for 20 years as if they had a right to it.

**3. Appeal and Error— preservation of issues—denial of request for jury instruction—failure to object—agreement with court**

Defendants did not preserve for appeal the denial of their request for a jury instruction on permissive use where they not only did not object, but said, "That's fine" when the court read its intended instruction.

Chief Judge MARTIN concurring in the result.

Appeal by defendants Gilbert and Connie Day and Gary and Cheryl Wood from judgment entered 4 October 2002 by Judge Benjamin G. Alford in Carteret County Superior Court. Heard in the Court of Appeals 3 March 2004.

*Taylor & Taylor, by Nelson W. Taylor, III, for plaintiffs-appellees.*

*Harris Law Firm, P.L.L.C., by R. Andrew Harris, for Gilbert and Connie Day and Gary and Cheryl Wood, defendants-appellants.*

*No brief filed by Ronald James Edwards and Janet Moore Edwards.*

CANNON v. DAY

[165 N.C. App. 302 (2004)]

GEER, Judge.

This appeal arises out of a dispute over whether plaintiffs acquired a prescriptive easement across defendants' lots permitting use of a private lane to access the public road from plaintiffs' lot. We hold that plaintiffs' evidence—that plaintiffs' predecessors-in-interest used the lane without permission for more than 20 years, maintained the lane, named the lane, and treated the lane as if they owned it— was sufficient to support a verdict in plaintiffs' favor. The trial court therefore properly submitted the issue to the jury, which ultimately found that a prescriptive easement existed.

## Facts

In November 1965, Carlyle and Julia Garner, plaintiffs' predecessors-in-interest, were deeded a parcel of land in Carteret County ("the Garner tract") without access to a public road. Between the Garner tract and Nine Mile Road lay a tract of land ("the Cannon tract") owned by the Garners' nephew, Clayton Cannon. A lane ("the farm lane") ran along the eastern edge of the Cannon tract, connecting the Garner tract to Nine Mile Road. Carlyle Garner, Clayton Cannon, and others had used the farm lane to move farm equipment and materials. In 1966, after Carlyle Garner made improvements to the farm lane and moved a house onto the Garner tract, the Garners began using the lane as their driveway. Plaintiffs offered evidence that the Garners never asked for nor received anyone's permission to use the farm lane.

Mr. Garner maintained the farm lane from 1966 until 1977. In 1977, Clayton Cannon subdivided the Cannon tract into four lots. One of the four lots fronted Nine Mile Road. Each of the three remaining lots was flag-shaped with the "flagpole" being a 10-foot-wide strip running parallel to the farm lane and connecting each lot to Nine Mile Road. When the Cannon tract was subdivided, the farm lane was graveled and otherwise improved, although testimony was conflicting as to whether Clayton Cannon or his sons Robin and Joel Cannon paid for the improvements. To reach their homes, the Garners and the owners of the flag-shaped lots drove on the farm lane. Although the road needed little maintenance after the improvements, Mr. Garner continued to help perform periodic maintenance as needed on the farm lane until his death in 1984.

Carlyle Garner named the farm lane "Possum Lane," carved a wooden sign with that name engraved on it, and installed the sign on

the public road near his mailbox. When Carteret County put in a 911 system, it renamed the farm lane "Carlyle Lane" in honor of Mr. Garner.

After Mr. Garner's death, his wife Julia Garner deeded the Garner tract to Robin Cannon in 1985, but continued to live on the property and use the farm lane until she moved into a nursing home in 1996. After Mrs. Garner moved, Robin Cannon allowed some friends to live in the Garner home; they continued to use the lane until Gilbert Day (now owner of the flag-shaped lot adjacent to the Garner tract) blockaded the lane in 1997 or 1998.

On 9 March 2000, Robin Cannon filed a complaint against the Days asserting the existence of an easement benefitting the Garner tract and seeking a permanent injunction preventing the Days from obstructing or otherwise interfering with his or his tenants' use of the farm lane. The Whitlows, who bought the Garner tract on 8 December 2000, were later added as plaintiffs, while Gary and Cheryl Wood and James and Janet Edwards, owners of the other flag-shaped lots, were later joined as defendants.

Defendants filed a motion for summary judgment on 5 September 2002 that was denied. After a jury trial at the 23 September 2002 session of Carteret County Superior Court, the jury found the existence of a prescriptive easement, and on 4 October 2002, the trial court entered judgment for plaintiffs. On 1 November 2002, defendants filed notice of appeal to this Court from the denial of their motion for summary judgment and from the final judgment.

I

As an initial matter, we address plaintiffs' motion to strike defendants' brief and dismiss the appeal. In support of their motion, plaintiffs point out several violations of the Rules of Appellate Procedure, including the following: (1) the brief's Table of Cases and Authorities contains no references to the pages on which the citations appear, in violation of N.C.R. App. P. 26(g)(2) and 28(b)(1); (2) the brief contains no statement of the grounds for appellate review, in violation of N.C.R. App. P. 28(b)(4); (3) the brief's Statement of Facts contains almost no page references to the transcript, the record, or exhibits, in violation of N.C.R. App. P. 28(b)(5); and (4) in the brief's argument section, the questions presented are not followed by specification of the pertinent assignments of error, in violation of N.C.R. App. P. 28(b)(6). In addition to those rule violations pointed out by

plaintiffs, we also note that defendants' brief is printed in 11-point non-proportionally-spaced type, with more than 27 lines per page, in violation of N.C.R. App. P. 26(g)(1) and 28(j).

"The Rules of Appellate Procedure are mandatory and failure to follow the rules subjects an appeal to dismissal." *Wiseman v. Wiseman*, 68 N.C. App. 252, 255, 314 S.E.2d 566, 567-68 (1984). Here, although we are very concerned about the extent of the violations of the Appellate Rules, we elect to suspend the Rules pursuant to N.C.R. App. P. 2 in order to review defendants' assignments of error.

## II

**[1]** Defendants first assign as error the trial court's denial of their motion for summary judgment. Our Supreme Court has held, however, that denial of a motion for summary judgment based on the sufficiency of the evidence is not reviewable following a trial:

> The purpose of summary judgment is to bring litigation to an early decision on the merits without the delay and expense of a trial when no material facts are at issue. After there has been a trial, this purpose cannot be served. Improper denial of a motion for summary judgment is not reversible error when the case has proceeded to trial and has been determined on the merits by the trier of the facts, either judge or jury.

*Harris v. Walden*, 314 N.C. 284, 286, 333 S.E.2d 254, 256 (1985) (internal citations omitted). We therefore decline to address the question whether the trial court properly denied defendants' motion for summary judgment.

Defendants also assign as error the trial court's consideration of the affidavit of Clayton Cannon submitted with plaintiffs' brief opposing defendants' motion for summary judgment. We have reviewed the affidavit and hold that the trial court could properly consider it under N.C.R. Civ. P. 56(e).

## III

**[2]** Defendants' primary contention on appeal is that the trial court's denial of their motion for a directed verdict was error. At the close of plaintiffs' evidence, defendants moved for a directed verdict on the ground that plaintiffs had failed to present sufficient evidence of adverse and hostile use of the disputed easement by Carlyle Garner. After the trial court denied their motion, defendants presented evidence. By offering their own evidence, defendants waived their

motion for a directed verdict made at the close of plaintiffs' evidence and, in order to preserve the question of the sufficiency of the evidence for appellate review, they were required to renew this motion at the close of all the evidence. *Gibbs v. Duke*, 32 N.C. App. 439, 442, 232 S.E.2d 484, 486, *disc. review denied*, 292 N.C. 640, 235 S.E.2d 61 (1977). Defendants did not, however, renew their motion for directed verdict at the close of the evidence. Because of this failure, defendants are not entitled to argue this issue on appeal.

Even if the question of the sufficiency of the evidence had been properly preserved, our review of the record reveals that the trial court properly denied the motion for a directed verdict.[1] A motion for a directed verdict tests the sufficiency of the evidence to take the case to the jury. *Horack v. Southern Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 309, 563 S.E.2d 47, 50 (2002). A trial court should grant such a motion only when, viewing the evidence in the light most favorable to the non-moving party and giving that party the benefit of every reasonable inference arising from the evidence, the evidence is insufficient for submission to the jury. *Id.* If there is more than a scintilla of evidence supporting each element of the non-moving party's claim, the motion for directed verdict should be denied. *Clark v. Moore*, 65 N.C. App. 609, 610, 309 S.E.2d 579, 580-81 (1983). Conflicts and inconsistencies in the evidence are to be resolved in favor of the non-moving party. *Davis & Davis Realty Co. v. Rodgers*, 96 N.C. App. 306, 308-09, 385 S.E.2d 539, 541 (1989), *disc. review denied*, 326 N.C. 263, 389 S.E.2d 112 (1990). This Court applies *de novo* review to a trial court's denial of a motion for directed verdict. *Denson v. Richmond County*, 159 N.C. App. 408, 411, 583 S.E.2d 318, 320 (2003) (questions concerning the sufficiency of the evidence to withstand a Rule 50 motion for directed verdict present an issue of law).

In order to establish the existence of a prescriptive easement, the party claiming the easement must prove four elements: " '(1) that the use is adverse, hostile or under claim of right; (2) that the use has

---

1. Defendants also argue that the jury verdict finding the existence of a prescriptive easement was not supported by sufficient evidence. This argument appears to be based on the trial court's failure to set aside the jury's verdict upon defendants' motion for judgment notwithstanding the verdict ("JNOV"). A motion for JNOV is not proper unless the moving party previously moved for a directed verdict at the close of all the evidence. N.C.R. Civ. P. 50(b)(1); *Gibbs*, 32 N.C. App. at 443, 232 S.E.2d at 486. Nevertheless, the test for determining the sufficiency of the evidence when ruling on a motion for JNOV is identical to that applied when ruling on a motion for directed verdict. *Cook v. Wake County Hosp. Sys., Inc.*, 125 N.C. App. 618, 620, 482 S.E.2d 546, 549 (1997).

been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed throughout the twenty-year period.' " *Perry v. Williams*, 84 N.C. App. 527, 528-29, 353 S.E.2d 226, 227 (1987) (quoting *Potts v. Burnette*, 301 N.C. 663, 666, 273 S.E.2d 285, 287-88 (1981)). Defendants have argued only that plaintiffs presented insufficient evidence to show that the Garners' use of the farm lane was hostile, adverse, or under a claim of right.[2]

There is a presumption that a party's use is permissive and not adverse. *Orange Grocery Co. v. CPHC Investors*, 63 N.C. App. 136, 138, 304 S.E.2d 259, 260 (1983). In order to rebut the presumption of permissive use, "[t]here must be some evidence accompanying the user which tends to show that the use is hostile in character and tends to repel the inference that it is permissive and with the owner's consent. A mere permissive use of a way over another's land, however long it may be continued, can never ripen into an easement by prescription." *Dickinson v. Pake*, 284 N.C. 576, 581, 201 S.E.2d 897, 900 (1974) (internal citation omitted). Nevertheless, as our Supreme Court has explained:

> To establish that the use is "hostile" rather than permissive, "it is not necessary to show that there was a heated controversy, or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the servient estate." A "hostile" use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right.

*Dulin v. Faires*, 266 N.C. 257, 260-61, 145 S.E.2d 873, 875 (1966) (quoting 17A Am. Jur. *Easements* § 76, p. 691).

In this case, plaintiffs presented evidence at trial that the Garners neither sought nor received permission to use the farm lane. Clayton

---

2. Defendants do not challenge the duration of the easement. We note, parenthetically, that "possession, not title, is the relevant consideration" in determining the period of adverse use. *Dickinson*, 284 N.C. at 586, 201 S.E.2d at 903. Thus, although Mrs. Garner conveyed the tract to Robin Cannon in 1985, because she remained in possession and continued to use the lane until 1996, her adverse use of the lane totaled 30 years. Since " 'one who succeeds to the possession of a dominant tenement thereby succeeds to the privileges of use of the servient tenement authorized by the easement[,]' " any prescriptive easement passed to Robin Cannon, and later, the Whitlows when they took possession of the Garner tract. *Id.* at 585, 201 S.E.2d at 903 (quoting 5 Restatement of Property § 487 (1944)).

Cannon testified that he never gave Mr. Garner permission to use the lane, but that Mr. Garner was still claiming it as his own. In addition, Mr. Garner continuously participated in the maintenance of the road; the Garners used the lane as if it were their own; they referred to it as "my road" or "our road;" they gave it a name; and Mr. Garner posted a sign with that name at the intersection with the public road.

Where, as here, the evidence shows that permission to use the lane had been neither given nor sought, that the plaintiffs performed maintenance required to keep the road passable, and that the plaintiffs used the road for over 20 years as if they had a right to it, the evidence is sufficient to rebut the presumption of permissive use and establish that the use was hostile and under a claim of right. *See Dickinson*, 284 N.C. at 583-84, 201 S.E.2d at 901-02 (evidence sufficient when family used disputed road as only means of access to their property, plaintiffs neither sought nor obtained permission to use the road, and plaintiffs performed maintenance on the road by raking leaves and scattering oyster shells). *See also Potts*, 301 N.C. at 668, 273 S.E.2d at 289 (where plaintiffs' evidence showed that disputed roadway had been openly and continuously used by plaintiffs and predecessors-in-title for a period of at least 50 years, no permission had ever been asked or given, plaintiffs performed some maintenance on road, and plaintiffs considered their use of the road to be a right and not a privilege, evidence was sufficient to rebut the presumption of permissive use); *Perry*, 84 N.C. App. at 529, 353 S.E.2d at 228 (plaintiff did not ask or receive permission to use road, plaintiff made statements regarding right to use road, and plaintiff maintained road for plaintiff's use).

Defendants rely on *Boger v. Gatton*, 123 N.C. App. 635, 638, 473 S.E.2d 672, 676, *disc. review denied*, 344 N.C. 733, 478 S.E.2d 3 (1996), in which this Court held that the plaintiffs offered insufficient evidence to rebut the presumption of permissive use. In *Boger*, however, the testimony at trial was undisputed that the defendant's predecessor-in-title gave the plaintiffs' predecessor-in-title express permission to build a road over his land. *Id.* ("the evidence shows that Ed Johnson created and then maintained the road incident to express permission given by Sollie Stroud and not as a means of giving notice to Mr. Stroud or others that he was claiming by adverse right"). Here, the evidence was in dispute whether the Garners were granted permission to use the farm lane, thus creating an issue for the jury.

Viewing the evidence in the light most favorable to plaintiffs, plaintiffs presented sufficient evidence of the existence of a prescrip-

CANNON v. DAY

[165 N.C. App. 302 (2004)]

tive easement to withstand defendants' motion for directed verdict and to support the jury's verdict. Accordingly, these assignments of error are overruled.

IV

[3] Finally, defendants contend that the trial court's denial of their request for a jury instruction on permissive use was prejudicial error entitling them to a new trial. Defendants submitted a written request for the following instruction:

In this case, evidence has been presented which could be interpreted by you as indicating that the use of Carlyle and Julia Garner commenced as a result of express permission granted to them by Clayton Cannon and later by the Defendants themselves. If you determine by the greater weight of the evidence that this evidence is true, then I instruct you that the use by Carlyle and Julia Garner cannot become adverse unless and until they disclaimed the arrangement and made the Defendants or their predecessors in title aware either by words or conduct that they did disclaim the arrangement and were thereafter claiming the use as a matter of right.

Although defendants contend that this instruction was supported by the evidence, they have failed to preserve this issue for appellate review.

"Rule 10(b)(2) of our Rules of Appellate Procedure requires counsel to lodge an objection to jury instructions before the jury retires, or otherwise waive the right to assign error thereto on appeal." *Hanna v. Brady*, 73 N.C. App. 521, 528, 327 S.E.2d 22, 26, *disc. review denied*, 313 N.C. 600, 332 S.E.2d 179 (1985). In this case, counsel for defendant not only failed to object when the trial judge indicated that he would not deviate from the pattern instruction and gave counsel an opportunity to object, but, in addition, counsel told the judge, after the judge read the instruction he intended to give, "That's fine, Your Honor." Therefore, defendants may not raise this issue on appeal. Accordingly, this assignment of error is overruled.

No error.

Judge HUDSON concurs.

Chief Judge MARTIN concurs in the result in a separate opinion.

**CANNON v. DAY**

[165 N.C. App. 302 (2004)]

MARTIN, Chief Judge, concurring in the result.

Although I agree with the majority's analysis of the issues raised by appellants in this case, in my view the appellants have, by their disregard of the requirements of the Rules of Appellate Procedure, abandoned their assignments of error. The Rules of Appellate Procedure are designed to facilitate appellate review; a party's failure to observe them frustrates the appellate process and requires the appellate court to expend additional time and resources performing tasks which should have been completed by the party. Thus, our courts have repeatedly held the Rules of Appellate Procedure to be mandatory, not directory, and have warned that such rules must not be disregarded and should be enforced uniformly. *State v. Fennell*, 307 N.C. 258, 297 S.E.2d 393 (1982) (citing *Pruitt v. Wood*, 199 N.C. 788, 156 S.E. 126 (1930)). It is as true today as when Chief Justice Stacy wrote:

> The work of the Court is constantly increasing, and, if it is to keep up with its docket, which it is earnestly striving to do, an orderly procedure, marked by a due observance of the rules, must be maintained. When litigants resort to the judiciary for the settlement of their disputes, they are invoking a public agency, and they should not forget that rules of procedure are necessary, and must be observed, in order to enable the courts properly to discharge their duties.

*Pruitt*, 199 N.C. at 790, 156 S.E. at 127.

In my view, the discretionary power to suspend the rules, granted by Appellate Rule 2, is to be used in limited instances where error is so fundamental as to amount to the denial of a fair trial, *see Fennell*, 307 N.C. at 263, 297 S.E.2d at 394, or where the nature of the rule violation is so technical or minor as to not inconvenience the reviewing court or render appellate review appreciably more difficult. If we were to exercise our discretion and suspend the rules as a matter of course, there would be little purpose in having them and no incentive on appellate litigants to observe them.

For the foregoing reasons, I vote to strike the brief of the defendants-appellants for their failure to observe the requirements of Appellate Rules 26 and 28, to treat their assignments of error as abandoned, and dismiss their appeal.