CHAD EVERETTE CALDWELL AND WIFE, CRYSTAL COPE CALDWELL, PLAINTIFFS v. RANDY DeWITT BRANCH AND KRISTY N. CRAWFORD, DEFENDANTS

No. COA06-94

(Filed 2 January 2007)

**1. Appeal and Error— standard of review not provided— printing costs assessed**

Although defendant's assignment of error could have been dismissed for failure to provide the standard of review with citation to authorities, the single violation was not substantial and defense counsel was instead charged with the printing costs of the appeal. N.C. R. App. P. 28(b)(6), 34(b).

CALDWELL v. BRANCH

[181 N.C. App. 107 (2007)]

**2. Easements— prescriptive—evidence sufficient**

A judgment granting a prescriptive easement in a bench trial was affirmed where plaintiffs satisfied their burden of proof on the required elements. The parties were related by blood or marriage; the property involved a driveway created in 1958 that was used or maintained openly by plaintiffs or their predecessors since at least 1971.

Appeal by defendant from order entered 1 August 2005 by Judge W. Robert Bell in Gaston County Superior Court. Heard in the Court of Appeals 18 September 2006.

*R. Locke Bell, for plaintiffs-appellees.*

*Malcolm B. McSpadden, for defendant-appellant Randy DeWitt Branch.*

JACKSON, Judge.

On 1 August 2005, the Gaston County Superior Court found that Chad Everette Caldwell and Crystal Cope Caldwell ("plaintiffs") had acquired an easement by prescription over property owned by Randy DeWitt Branch and Kristy N. Crawford. Branch ("defendant") appealed to this Court, and we now affirm.

The instant dispute arose over a right-of-way across a parcel of land in Bessemer City, North Carolina, and all parties in the case are related by blood or marriage. The servient tract ("Tract C") is a 0.42-acre parcel fronting Inman Avenue, and the dominant tract ("the Caldwell Property") is located to the west of and adjacent to Tract C. A 0.27-acre lot ("Tract B") sits directly to the north of and contiguous to Tract C. Another 0.27-acre lot ("Tract A") sits directly to the north of and contiguous to Tract B. The lot directly to the south of Tract C ("the Branch Property") is owned by defendant's parents.

In 1958, plaintiff's grandparents built a house on the Caldwell Property. At the time, defendant's mother and father lived on the Branch Property; an Episcopal Church building sat on Tract A; and the Episcopal rectory was located on Tract B. During the construction of the Caldwell home, workers and vendors used Tract C for access to the Caldwell Property. By the time the house was completed, a *de facto* driveway spanning approximately 149 feet had been created that bisected Tract C and ran east to west from Inman Avenue to the Caldwell Property. The Caldwells and Branches, as well as

their predecessors in interest, have referred at all times to the driveway as the "Caldwell driveway," and a mailbox for the Caldwell Property was placed at the end of the driveway where it intersects with Inman Avenue.

From 1958 to 1990, the Episcopal Church used Tract C for parking. During this period of time, the Caldwells and any visitors to the Caldwell Property used the driveway to access the Caldwell Property. Also during this time, the Branches occasionally parked their cars on Tract C and used the driveway to access their property. Neither the Caldwells nor the Branches ever requested permission from the church to use the driveway. Additionally, although neither the Caldwells nor the Branches asked permission to maintain the driveway, both contributed to its maintenance. At various times over the thirty-two-year period, members of the Caldwell family scraped the driveway with a tractor, spread additional gravel on the driveway, and sufficiently preserved the driveway's condition so that cars could traverse it. DeWitt Branch, defendant's father, also scraped the driveway with a tractor and spread cinders from his mill when the driveway became muddy. At some point prior to 1990, plaintiff Chad Caldwell, without having asked or received permission from the church, paved a portion of the driveway with concrete to prevent rain runoff from causing the driveway to become rutted. Through such maintenance, the path of the driveway has remained the same over the years.

With the exception of a few months following his marriage in 1990, Chad Caldwell has lived in the Caldwell house since he was born on 7 August 1971. In 1994, Chad Caldwell purchased the house and property from his grandfather, and the Caldwell Property formally was conveyed to plaintiffs by deed recorded 4 December 2002.

In 1990, DeWitt Branch purchased Tracts A, B, and C from the Episcopal Church, which was in the process of relocating. Without asking permission from the Branches, plaintiffs and visitors to the Caldwell Property continued to use the driveway for ingress and egress, and the Branches, aware of such use, did not object.

In 1996, DeWitt Branch told defendant that he would give defendant Tract C, and in 2002, the property was deeded to defendant. Chad Caldwell then asked defendant if he could continue to use the driveway to access his property. Defendant, who was planning to build a house on Tract C, refused to allow plaintiffs continued access over the right-of-way in dispute, but stated that he would find another

point of access for plaintiffs.[1] Nevertheless, plaintiffs and visitors to the Caldwell Property continued to use the driveway until defendant blocked the driveway in January 2003. Consequently, on 17 January 2003, plaintiffs filed suit claiming they had acquired an easement across Tract C and that defendant was interfering with the use of that easement. The trial court found in favor of plaintiffs, and defendant appeals from that ruling.

**[1]** As a preliminary matter, we note that defendant's brief fails to comport fully with the North Carolina Rules of Appellate Procedure. Rule 28(b)(6) provides that "[t]he argument shall contain a concise statement of the applicable standard(s) of review for each question presented, which shall appear either at the beginning of the discussion of each question presented or under a separate heading placed before the beginning of the discussion of all the questions presented." N.C. R. App. P. 28(b)(6) (2006). Rule 28(b)(6) further requires that "the statement of applicable standard(s) of review shall contain citations of the authorities upon which the appellant relies." *Id.* In the case *sub judice*, defendant has not provided this Court with the applicable standard of review, much less citation of authorities supporting such a standard, for his contention that the trial court erred in finding a prescriptive easement in favor of plaintiffs.

"The North Carolina Rules of Appellate Procedure are mandatory," *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 401, 610 S.E.2d 360, 360 (per curiam), *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005), and Rule 25(b) of the Rules of Appellate Procedure provides this Court with the authority to impose sanctions for failure to follow the rules. *See* N.C. R. App. P. 25(b) (2006). It appears to be the trend of this Court to more severely penalize parties for "substantial," "numerous," or "multiple" violations of our appellate rules, rather than a single violation such as is present in the instant case. *See Stann v. Levine*, 180 N.C. App. 1, 5, 636 S.E.2d 214, 217 (2006) ("When viewed *in toto*, the nature and number of rules violations, combined with the absence of any compelling justification for suspending the rules pursuant to Rule 2, justifies dismissal of plaintiff's appeal."). Although we could dismiss defendant's assignment of error as a sanction, *see, e.g., State v. Summers*, 177 N.C. App. 691, 700, 629 S.E.2d 902, 908, *disc. rev. denied and appeal dismissed*, 360 N.C. 653, 637 S.E.2d 192 (2006), we instead choose to order defendant's counsel

---

1. Although the trial court states that this encounter occurred in 1966, this appears to be a clerical error, as the findings of fact proceed chronologically and Chad Caldwell was not born until 1971. The date instead should read 1996.

to pay the printing costs of this appeal pursuant to Rule 34(b), as defendant's single violation is not substantial. *Cf. Overcash v. N.C. Dep't of Env't & Natural Res.*, 179 N.C. App. 697, 702 n.2, 635 S.E.2d 442, 446 (2006) (reviewing the appeal even though the petitioner "ha[d] not complied with N.C. R. App. P. 28(b)(6), which requires not only that '[t]he argument . . . contain a concise statement of the applicable standard(s) of review,' but also that the statement of the standards of review 'contain citations of the authorities upon which the appellant relies.' "). We instruct the Clerk of this Court to enter an order accordingly.

[2] "The standard of review on appeal from a judgment entered after a non-jury trial is 'whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment.' " *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (quoting *Sessler v. Marsh*, 144 N.C. App. 623, 628, 551 S.E.2d 160, 163, *disc. rev. denied*, 354 N.C. 365, 556 S.E.2d 577 (2001)), *disc. rev. denied*, 356 N.C. 434, 572 S.E.2d 428 (2002).

It is well-settled that to establish the existence of a prescriptive easement, the party claiming the easement must prove four elements concerning the property:

(1) that the use is adverse, hostile or under a claim of right; (2) that the use has been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed throughout the twenty-year period.

*Potts v. Burnette*, 301 N.C. 663, 666, 273 S.E.2d 285, 287-88 (1981); *see also West v. Slick*, 313 N.C. 33, 49-50, 326 S.E.2d 601, 610-11 (1985). Mere failure of the owner of the servient tenement to object— even if he was aware of the use—is insufficient, as the party seeking to claim the easement must overcome the presumption that a party's use is permissive and not adverse. *See Henry v. Farlow*, 238 N.C. 542, 543-44, 78 S.E.2d 244, 245 (1953); *see also Cannon v. Day*, 165 N.C. App. 302, 307, 598 S.E.2d 207, 211, *disc. rev. denied*, 359 N.C. 67, 604 S.E.2d 309 (2004). Indeed, " '[t]here must . . . be some evidence accompanying the user, giving it a hostile character and repelling the inference that it is permissive and with the owner's consent, to create the easement by prescription and impose the burden upon the land.' " *Farlow*, 238 N.C. at 544, 78 S.E.2d at 245 (quoting *Darr v.*

*Carolina Aluminum Co.*, 215 N.C. 768, 772, 3 S.E.2d 434, 437 (1939)). However, our Supreme Court has clarified the hostility requirement by explaining that

> it is not necessary to show that there was a heated controversy, or a manifestation of ill will, or that the claimant was in any sense an enemy of the owner of the servient estate. A "hostile" use is simply a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under claim of right.

*Dulin v. Faires*, 266 N.C. 257, 260-61, 145 S.E.2d 873, 875 (1966) (internal citation and quotation marks omitted). This Court has noted that "adverse use implies use that is exclusive as against the community or public at large." *Orange Grocery Co. v. CPHC Investors*, 63 N.C. App. 136, 139, 304 S.E.2d 259, 261 (1983).

In the case *sub judice*, plaintiffs satisfied their burden of proving each of the elements required for a prescriptive easement. The alleged easement first was established in 1958 as a means for ingress and egress to the Caldwell Property when the house was being built. Cheryl Lindsay testified that she was eight years old when the house was built, that she lived in the house until 1969 when she was nineteen years old, and that she continued to visit long after moving out. During all of this time, however, the driveway at issue was the only way to access the house that she has ever known or used. Ms. Lindsay testified that during the time she lived in the house, she was unaware as to who owned Tract C but was aware that her family maintained the road. She further testified that visitors to the Caldwell house, as well as the Branches, used the driveway. Finally, although Tract C and the driveway that ran across it were owned by the Episcopal Church, she never saw members of the church use the driveway.

Plaintiff Chad Caldwell testified that he had lived in the house since 1971 and that, while he could not say for sure who used the driveway before he was born, the driveway at issue was the road used to access the Caldwell Property. Chad Caldwell further testified that the Caldwells' mailbox at the end of the driveway had been there as long as he had been alive. Chad Caldwell recalled that his grandfather, Ken Caldwell, had maintained the driveway by using his tractor to scrape and gravel it from Inman Avenue all the way to the house. Chad Caldwell also explained how he carried on his grandfather's work in maintaining the road by scraping and graveling it. Chad Caldwell further testified that, without providing notice or seeking permission, he

paved a portion of the driveway to decrease water damage to the road. Finally, Chad Caldwell testified that prior to filing the lawsuit, he never had any conversations or negotiations regarding purchasing the right-of-way.

DeWitt Branch, defendant's father, testified that while he was aware that plaintiffs used and maintained the road, he did not care about such use. DeWitt Branch further stated that "everybody"—*i.e.*, members of the church and Ken Caldwell—used the driveway, but only the plaintiffs and their predecessors in interest used the whole length of the driveway.

Based on the record in the present dispute, we hold the trial court was justified in finding a prescriptive easement in favor of plaintiffs. Plaintiffs and their predecessors in interest never asked permission to use and maintain the land, and although permissive use is presumed, the use was obvious and spanned a long period of time. The Caldwells and visitors to the Caldwell Property traversed the driveway on a daily basis, and plaintiffs and their predecessors maintained the road by scraping, graveling, and paving a portion of the road. Plaintiffs and their predecessors treated the driveway as their own, and a mailbox for the Caldwell Property stood at the end of the driveway abutting a public road for over thirty years. Additionally, the Episcopal Church, whose members frequently parked on Tract C, must have been aware of the use by and the intentions of the plaintiffs and their predecessors in interest. As such, plaintiffs' use of the driveway was both open and notorious as well as hostile and adverse. The record is clear that the direction, size, and location of the driveway has remained fixed and constant since 1958, and thus, there has been substantial identity of the claimed easement. Finally, the use has been for more than twenty years. Plaintiffs can trace the hostile and open use of the driveway back at least to 1971. As such, this Court need not address whether the adverse period began running from 1958. The span of time from 1971, when Chad Caldwell was born, to 2003, when defendant blocked the driveway and plaintiffs filed suit, is sufficient to meet the twenty-year requirement for a prescriptive easement.

Although defendant contends that the trial court's findings are not supported and that the findings, in turn, do not support the court's conclusions of law, in the instance of a bench trial, "the court's findings of fact have the force and effect of a verdict by a jury and are conclusive on appeal if there is evidence to support them, even though the evidence might sustain findings to the contrary." *Williams*

*v. Pilot Life Ins. Co.*, 288 N.C. 338, 342, 218 S.E.2d 368, 371 (1975). Furthermore, "[a]s fact finder, the trial court is the judge of the credibility of the witnesses who testify," and thus, in evaluating any inconsistencies and contradictions between and among witnesses, "[t]he trial court determines what weight shall be given to the testimony and the reasonable inferences to be drawn therefrom." *Cornelius v. Helms*, 120 N.C. App. 172, 175, 461 S.E.2d 338, 340 (1995), *disc. rev. denied*, 342 N.C. 653, 467 S.E.2d 709 (1996).

Accordingly, as this Court stated in *Cannon v. Day*,

[w]here, as here, the evidence shows that permission to use the lane had been neither given nor sought, that the plaintiffs performed maintenance required to keep the road passable, and that the plaintiffs used the road for over 20 years as if they had a right to it, the evidence is sufficient to rebut the presumption of permissive use and establish that the use was hostile and under a claim of right.

*Cannon*, 165 N.C. App. at 308, 598 S.E.2d at 212.

AFFIRMED.

Chief Judge MARTIN and Judge ELMORE concur.