STATE OF NORTH CAROLINA v. RONALD EUGENE PARKER

No. COA07-247

(Filed 6 November 2007)

**1. Appeal and Error— appellate rules violations—failure to provide applicable standards of review for assignments of error**

Although defendant's brief failed to provide the applicable standards of review for any of his assignments of error as required by N.C. R. App. P. 28(b)(6), the Rules of Appellate pro-

cedure allow for the imposition of less drastic sanctions than dismissal and the Court of Appeals elected to chastise defense counsel with an admonishment to exercise more diligence in stating the standard of review in appellate briefs.

**2. Evidence— hearsay—testimony given by witness in course of court proceedings excluded**

The trial court did not err in an involuntary manslaughter case by allowing the State, over objection, to ask defendant about portions of testimony given by a previous witness even though defendant contends it was inadmissible hearsay, because: (1) the Advisory Committee's notes to N.C.G.S. § 8C-1, Rule 801 state that testimony given by a witness in the course of court proceedings is excluded from the rule since there is compliance with all the ideal conditions for testifying, and the statements at issue were in reference to an officer's testimony given during the trial; (2) the statements were not offered to prove the truth of the matter asserted, but rather to challenge the credibility of defendant's testimony when compared with the officer's testimony; (3) cross-examination of a witness as to any matter relevant to any issue, including credibility is proper; and (4) even if the trial court's ruling was error, defendant failed to show how the error was prejudicial.

**3. Criminal Law— instruction—acting in concert**

The trial court did not abuse its discretion in an involuntary manslaughter case by instructing the jury on acting in concert, because: (1) it is not strictly necessary that defendant share the intent or purpose to commit the particular crime actually committed, but instead the focus is on whether there was a common purpose to commit a crime; and (2) there was sufficient evidence from which a reasonable jury could conclude defendant acted in concert with another when defendant was present when the victim received thirty-three of his thirty-six wounds, and witnesses saw defendant strike the victim at least nine times.

**4. Homicide— involuntary manslaughter—failure to submit requested instruction for simple assault**

The trial court did not err in an involuntary manslaughter case by denying defendant's request for a jury instruction on simple assault, because our Supreme Court has already concluded that an indictment charging that defendant unlawfully, willfully, and feloniously and of malice aforethought did kill and murder a

victim was insufficient to support the submission of assault verdicts to the jury.

**5. Homicide— involuntary manslaughter—instruction—plain error analysis**

The trial court did not commit plain error by instructing the jury on involuntary manslaughter because: (1) defendant's contention is not supported by any argument in his brief; and (2) defendant failed to show any alleged error was fundamental or so prejudicial that justice could not be done.

Appeal by defendant from judgment entered 11 August 2006 by Judge Edwin Wilson in Davidson County Superior Court. Heard in the Court of Appeals 18 October 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Derrick C. Mertz, for the State.*

*Jones, Free & Knight, PLLC, by Walter L. Jones, for defendant-appellant.*

JACKSON, Judge.

Ronald Eugene Parker ("defendant") appeals from judgment entered upon his conviction for involuntary manslaughter. For the reasons stated below, we hold no error.

On 6 January 2006, Carlos Claros Castro ("Castro") was arrested for the offenses of hit and run and driving while impaired. Castro was transported to the Davidson County Jail. On 7 January 2006, Michael Shell ("Officer Shell"), a detention officer with the Davidson County Sheriff's Office, was working in the jail. There were five officers working after the shift change, including Officer Shell, Sergeant Brandon Huie ("Sergeant Huie"), supervisor for the jail, and defendant, who served as shift supervisor.

Officer Shell's attention was drawn to cell P-33 around 8:30 p.m. The cell housed Castro and Sorrel ("Sorrel"). According to Sorrel, Castro had broken the head off a mop and was refusing to give it back to the cleaning crew. Officer Shell opened the cell door and instructed Sorrel to exit to cell P-34. Sergeant Huie was called to the control tower and advised of the situation. Sergeant Huie picked up a taser, said he would handle the situation, and left the control tower.

STATE v. PARKER

[187 N.C. App. 131 (2007)]

Sergeant Huie approached cell P-33 and Officer Shell turned on the intercom. Sergeant Huie positioned himself between the door and the separation wall between the two cells. Sergeant Huie called out to Castro and asked where the mop handle was. Sergeant Huie twice ordered him to give up the mop handle, but Castro did not comply. The order was given in English, which Castro may not have understood. Castro moved forward and started banging the handle around the walls and bars of the cell. Sergeant Huie threatened force, waited a few seconds, and then aimed and activated his taser at Castro's mid-chest. The blast doors opened and the taser cycled for five seconds. This cycle took Castro down to one knee.

At this point, Officer Shell called for backup across the radio but could not find anyone. Castro became agitated again and shattered the mop handle until approximately two feet of the handle remained in his hand. Sergeant Huie applied the taser again for an eight to ten second cycle. Castro again fell down to one knee. Sergeant Huie ordered Officer Shell to open the door. Sergeant Huie then stepped inside the cell briefly, then backed out and shut the door with Castro remaining in the cell. Sergeant Huie discharged a one and a half second burst of pepper spray at Castro. Sergeant Huie then ordered Officer Shell to open the door again. Sergeant Huie entered the cell with his ASP baton extended and struck Castro three times on the back of his thigh.

Sergeant Huie then wrestled with Castro. Approximately two minutes elapsed from the time Huie first struck Castro until defendant arrived with his ASP baton. Defendant entered the cell and held down Castro. Defendant proceeded to strike Castro with his ASP baton and with his hand. Officer Shell witnessed a total of at least twelve strikes; three strikes were by Sergeant Huie and nine by defendant.

Officer Shell was relieved of his duties in the control tower and headed through the jail to cell P-33. When he arrived and entered the cell, Castro was lying on the floor on his stomach, handcuffed, with his head turned to the right facing the wall. Defendant was sitting on Castro's legs while Sergeant Huie was to the side. Officer Shell noticed cyanosis, the bluing of the skin around the ears and corner of Castro's mouth, which indicated Castro's breathing and circulation had stopped. Officer Shell left the cell to retrieve the medical kit from the tower. When Officer Shell returned to the cell it appeared that no CPR or lifesaving measures had been administered to Castro. Upon defendant's order, Castro's body was removed from the cell into the

STATE v. PARKER

[187 N.C. App. 131 (2007)]

corridor where Officer Shell attempted CPR. Officer Shell continued CPR attempts until EMS arrived ten to fifteen minutes later. Castro never was resuscitated.

Based upon two autopsies, Castro died as a result of multiple blunt force injuries, four in particular to the head which caused hemorrhaging and cerebral edema, with a contribution of asphyxiation, either by compression of the neck or lungs.

On 11 August 2006, the jury found defendant guilty of involuntary manslaughter. Defendant appeals this judgment.

[1] As a preliminary matter, we note that defendant's brief failed to provide the applicable standards of review for any of his assignments of error. Rule 28(b)(6) of the Rules of Appellate Procedure provides that

[t]he argument shall contain a concise statement of the applicable standard(s) of review for each question presented, which shall appear either at the beginning of the discussion of each question presented or under a separate heading placed before the beginning of the discussion of all the questions presented.

N.C. R. App. P. 28(b)(6) (2007). Defendant did not indicate the applicable standards of review, either at the beginning of each question presented or under a separate heading. Violation of this rule may result in dismissal. *See State v. Summers*, 177 N.C. App. 691, 700, 629 S.E.2d 902, 908-09 (declining to address one of the defendant's arguments when he failed to include a statement of the applicable standard of review), *appeal dismissed and disc. rev. denied*, 360 N.C. 653, 637 S.E.2d 192 (2006). We also note that our Rules of Appellate Procedure allow for the imposition of less drastic sanctions, *see, e.g., Caldwell v. Branch*, 181 N.C. App. 107, 110-11, 638 S.E.2d 552, 555 (2007) (taxing printing costs), a remedy which is particularly appropriate in a criminal matter. Therefore, we elect to chastise defense counsel with an admonishment to exercise more diligence in stating the standard of review in briefs prepared for this Court.

[2] Defendant first contends on appeal that the trial court erred by allowing the State, over objection, to ask him about portions of testimony given by a previous witness. We disagree.

At trial, defendant objected to questions posed by the State regarding Officer Shell's testimony. Defendant argues that this line of questioning was inadmissible hearsay, irrelevant, and prejudicial. Specifically, the following colloquies are at issue:

Q: Did you hear Mr. Shell testify that Mr. Shell—the gentlemen halfway back—found that mop head underneath the bunk?

[DEFENSE COUNSEL]: Objection to what Mr. Shell testified to.

Q: Did you hear that testimony.

[DEFENSE COUNSEL]: Object.

THE COURT: Overruled.

Q: Did you hear that testimony, sir?

A: I cannot totally remember what Mr. Shell had said with everyone else that has answered questions during the proceedings of this.

A few moments later a similar colloquy took place:

Q: You heard Mr. Shell testify to that fact that you remained in that position seated on Mr. Castro the entire time that Mr. Shell was initially in that cell, correct, you heard testimony—did you hear him testify to that?

[DEFENSE COUNSEL]: Objection to what somebody else testified to, your Honor.

THE COURT: Overruled.

Q: Did you hear him testify to that?

A: Yes, sir, I did.

One final similar colloquy took place:

Q: You heard Mr. Shell testify in this matter that when he arrived Mr. Castro was face down, head toward the jail door, facing the wall on the left side, if you would be looking into the jail, you heard that testimony?

[DEFENSE COUNSEL]: Objection to what another witness testified to, your Honor.

THE COURT: Well, overruled.

Rule 801(c) of the North Carolina Rules of Evidence defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c)

(2005). The Advisory Committee's notes to Rule 801 state that "[t]estimony given by a witness in the course of court proceedings is excluded [from the Rule] since there is compliance with all the ideal conditions for testifying." N.C. Gen. Stat. § 8C-1, Rule 801 cmt. (2005). Because the statements at issue were in reference to Officer Shell's testimony given *during* the trial, they do not constitute hearsay.

Moreover, the statements were not offered to prove the truth of the matter asserted, but rather to challenge the credibility of defendant's testimony when compared with Officer Shell's testimony. "A prosecutor has the duty to vigorously present the State's case. In so doing, the prosecutor may cross-examine a witness concerning any relevant issue, including the witness' credibility." *State v. Prevatte*, 356 N.C 178, 237, 570 S.E.2d 440, 472 (2002) (citing *State v. Brock*, 305 N.C. 532, 538, 290 S.E.2d 566, 571 (1982), *cert. denied*, 538 U.S. 986, 155 L. Ed. 2d 681 (2003) ; N.C. Gen. Stat. § 8C-1, Rule 611(b) (2001)). Because the statements were introduced for this purpose, they were relevant. *See* N.C. Gen. Stat. § 8C-1, Rules 401 and 402 (2005). It is well-established that "[c]ross-examination of a witness as to any matter relevant to any issue, including credibility, is proper." *State v. Lee*, 335 N.C. 244, 271, 439 S.E.2d 547, 560, *cert. denied*, 513 U.S. 891, 130 L. Ed. 2d 162 (1994); N.C. Gen. Stat. § 8C-1, Rule 611(b) (2005). Therefore, the trial court did not err in permitting this line of questioning.

Even if we could agree that the trial court's ruling was in error, defendant would have to show that this error was prejudicial. The test for prejudicial error in matters not affecting constitutional rights is whether "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2005). "The burden of showing such prejudice under this subsection is upon the defendant." *Id.* Defendant claims he was prejudiced by the introduction of these statements but does not explain how he was prejudiced. Therefore, defendant's argument is overruled.

**[3]** Defendant next contends that the trial court erred by instructing the jury on the legal theory of acting in concert. We disagree.

The choice of jury instructions rests "within the trial court's discretion and will not be overturned absent a showing of abuse of discretion." *State v. Nicholson*, 355 N.C. 1, 66, 558 S.E.2d 109, 152 (citation omitted), *cert. denied*, 537 U.S. 845, 154 L. Ed. 2d 71 (2002). A

trial court abuses its discretion when its ruling is "so arbitrary that it could not have been the result of a reasoned decision." *State v. Wilson,* 313 N.C. 516, 538, 330 S.E.2d 450, 465 (1985).

The trial court gave an instruction for acting in concert as to second degree murder, voluntary manslaughter, and involuntary manslaughter. It is well-established that if

> two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.

*State v. Barnes,* 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997) (alteration in original) (citations omitted), *cert. denied,* 523 U.S. 1024, 140 L. Ed. 2d 473 (1998). Defendant contends that the trial court improperly applied the principle of concerted action because Sergeant Huie and defendant did not have a common plan or purpose.

Defendant argues that his rationale during the "affray" was to aid an officer in need of emergency assistance. Although this may be true, "it is not strictly necessary . . . that the defendant share the intent or purpose to commit the particular crime actually committed." *State v. Erlewine,* 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991). Instead, it is whether there was a "common purpose to commit *a* crime." *Id.* (emphasis in original).

In the instant case, there was sufficient evidence from which a reasonable jury could conclude that defendant acted in concert with Sergeant Huie. Defendant was present when the victim received thirty-three of his thirty-six wounds, and witnesses saw defendant strike the victim at least nine times. Therefore, the trial court did not abuse its discretion in instructing the jury on acting in concert.[1]

**[4]** By his next assignment of error, defendant contends that the trial court erred in denying his request for a jury instruction on simple assault. We disagree.

Defendant was charged in this case by a "short-form" murder indictment, which alleged that he "unlawfully, willfully and feloniously did of malice aforethought kill and murder Carlos Claros

---

1. Defendant's rationale at the time of the "affray" is pertinent to an instruction on self-defense, which defendant received.

Castro." In *State v. Whiteside*, 325 N.C. 389, 383 S.E.2d 911 (1989), our Supreme Court held that an indictment charging "that defendant 'unlawfully, willfully and feloniously and of malice aforethought did kill and murder the victim' [was] insufficient to support a verdict of guilty of assault, assault inflicting serious injury or assault with intent to kill." *Id.* at 403, 383 S.E.2d at 919. Because the indictment in *Whiteside* would not support an assault verdict, our Supreme Court held that "the trial judge did not err in refusing to submit potential assault verdicts to the jury." *Id.* at 403-04, 383 S.E.2d at 919. Similarly, because the indictment in the instant case is indistinguishable from the indictment at issue in *Whiteside*, we reject this argument and hold that the trial court did not err.

**[5]** In defendant's final assignment of error, he contends that the trial court committed plain error by instructing the jury on involuntary manslaughter. We disagree.

Defendant did not object to this instruction before the trial court and ordinarily could not assign this as error. *See* N.C. R. App. P. 10(b)(2) (2007). However, because defendant argues plain error, we may review the merits of his argument despite his failure to properly preserve this issue for appeal. *See* N.C. R. App. P. 10(c)(4) (2007).

Defendant's contention that the jury instruction for involuntary manslaughter amounted to plain error is not supported by any argument in his brief.

> The right and requirement to specifically and distinctly contend an error amounts to plain error does not obviate the requirement that a party provide argument supporting the contention that the trial court's instruction amounted to plain error, as required by subsections (a) and (b)(5) of [North Carolina] Rule [of Appellate Procedure] 28.

*State v. Cummings*, 352 N.C. 600, 636, 536 S.E.2d 36, 61 (2000), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001). Moreover, to demonstrate that plain error has occurred, defendant must show that the error was a " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir. 1982)) (emphasis in original). Defendant provides no argument demonstrating that this occurred. Therefore, we hold no error in giving this instruction.

For the foregoing reasons, we hold that defendant received a fair trial free from prejudicial error.

No Error.

Judges TYSON and STROUD concur.