707 S.E.2d 658 (2011)
Thomas S. DEANS and wife Yvonne G. Deans, Plaintiffs,
v.
Linda Simmons MANSFIELD, Johnny DiPiazza, Peter C. Mace, Joanne F. Mace, Hayek Farms, LLC, Jonathan C. Hescock, Patricia N. Hescock, Grande Pines Homeowners' Association, Inc., James A. Jones, Elizabeth B. Jones, MNM Land, LLC, Marc Massaux, Scott F. Brewton, Sonja R. Brewton, Ronald Wall, Barbara Wall, Dirck Andrew Yow, Mary Elizabeth Yow, Grande Pines, LLC, Defendants.
No. COA10-398.
Court of Appeals of North Carolina.
March 1, 2011.
*660 Law Office of Marsh Smith, P.A., Southern Pines, by Marsh Smith, for plaintiff-appellants.
Nexsen Pruet, PLLC, by Brian T. Pearce, Greensboro, for defendant-appellees Linda Simmons Mansfield, Scott F. Brewton, and Sonja R. Brewton.
Foyles Law Firm, PLLC, by Jody Stuart Foyles, Pinehurst, for defendant-appellees Ronald Wall and Barbara Wall.
Doster, Post, Silverman & Foushee, P.A., by Jonathan Silverman, Sanford, defendant-appellees Peter C. Mace, Grande Pines, LLC, Grande Pines Homeowners' Association, Inc., James A. Jones and Elizabeth Jones.
STEELMAN, Judge.
Where evidence presented at the summary judgment hearing revealed that there was a genuine issue of material fact as to whether a prescriptive easement had been established in 1972 over the property of defendants, the trial court erred in granting summary judgment in favor of defendants.

I. Factual and Procedural Background
This action concerns a dispute regarding the use of a soil road leading from plaintiffs' property to Hoffman Road (S.R.1004) over the real property of defendants in Sandhills Township, Moore County. Plaintiffs' property was originally owned by John Frederick Brown, who died intestate on 9 August 1941. Interests in the property descended as follows: (1) 1/3 interest to his wife Alice Brown (Alice), and (2) 2/3 interest divided between his six children (1/9 each): Mary, Howard, Phillip, Sadie, Clifton, and Vardell. Alice, Howard, and Vardell thereafter resided on the property (Brown estate). As early as 1950, Howard and Vardell maintained a soil road leading to Hoffman Road, a public roadway. Foster Williams (Williams), a neighbor, harvested timber from the Brown Estate for Alice and used the soil road to remove the timber. Williams observed Howard and Vardell maintain the soil road on numerous occasions using a John Deere tractor. Howard and Vardell built terraces across the soil road to keep the water from running down the middle of the road. Howard also used a bush hog and trimmed limbs to maintain the soil road. Williams also performed maintenance on the southern fork of the soil road. In addition to the Browns and Williamses, surrounding neighbors, Arthur Thomas's family, Worth Brown's family, and, in the *661 1970's, Dr. Charles Hartsell, Jr.'s family, used the soil road to access Hoffman Road.
In 1972, Vardell died in an accident at the Firefox golf course. Thereafter, Alice and Howard lived on the Brown estate. On 13 July 1989, Howard conveyed to Thomas S. Deans (Deans) and Yvonne G. Deans (collectively, plaintiffs) approximately 69.24 acres of land which was adjacent to the Brown estate. Deans was Mary's son and Howard's nephew. No structures or improvements were on the property. In 1993, Mary died and devised her interest in the Brown estate to plaintiffs.
In 1998, Peter Mace (Mace) and Robert Edwards (Edwards) purchased approximately 1,500 acres of land and developed Grande Pines Subdivision. The soil road traversed several lots in the subdivision. Because Howard traveled over portions of these lots to access Hoffman Road, Mace obtained a Deed of Release from Howard in which he acknowledged that his use of the soil road prior to 11 August 1999 had been intermittent and permissive, and released all of his rights in the soil road. Subsequently, the soil road was blocked by the installation of a gate, plowed soil, and felled trees. On 5 December 2000, Deans and Williams filed a lawsuit against Mace and Edwards asserting the existence of a prescriptive easement in the soil road across lots in the Grande Pines Subdivision.
Howard died on 2 January 2001 and devised his interest in the Brown estate to Deans. Deans subsequently acquired the remaining interests in the Brown estate from his cousins.[1] In September 2002, the 2000 lawsuit went to mediation and the parties agreed to a settlement. A document entitled Easement Requirements was signed by Deans, Williams, Mace, and Edwards and stated that a prescriptive easement was to be defined by a survey of the existing roadway. On 25 September 2002, Deans and Williams voluntarily dismissed the first lawsuit against Mace and Edwards. In October 2003, Mace executed restrictive covenants for the Grande Pines Subdivision and noted that the equestrian easements were "subject to the right[s] of third parties for ingress, regress and egress as a result of the settlement of a claim of prescriptive rights to the use of an existing soil road."[2]
On 12 December 2006, Mace's attorney sent Deans a letter requesting that he voluntarily cease traveling from his property through Grande Pines Subdivision to Hoffman Road. On 2 January 2009, plaintiffs filed a complaint against the owners of the tracts of land in Grand Pines Subdivision which the soil road crossed and alleged that they had established a prescriptive easement to use the soil road for ingress and egress. Ronald and Barbara Wall, Linda Mansfield, Scott and Sonja Brewton, Marc Massaux, MNM Land, LLC, and Hayek Farms, LLC filed answers and denied the material allegations of plaintiffs' complaint. Thereafter, the Walls, Mansfield, and the Brewtons filed motions for summary judgment. James and Elizabeth Jones, Peter and Joanne Mace, Grande Pines, LLC, and Grande Pines HOA, Inc. also filed motions for summary judgment.
On 23 September 2009, the trial court granted defendants' motions for summary judgment. On 2 October 2009, plaintiffs filed a motion to alter or amend judgment. On 30 November 2009, plaintiffs filed a motion for summary judgment against the non-defaulted defendants who had not previously moved for summary judgment. On 16 December 2009, the trial court denied plaintiffs' motion to alter or amend the 23 September 2009 order. On 4 January 2010, the trial court entered an order granting summary judgment to certain non-moving defendants, i.e. MNM Land, LLC, Marc Massaux, and Hayek Farms, LLC. In this order, the trial court noted that default had been previously entered against the following defendants: Johnny DiPiazza, Jonathan C. Hescock, Patricia N. Hescock, Dirk Andrew Yow, and Mary Elizabeth *662 Yow.[3]
Plaintiffs appeal.

II. Prescriptive Easement
In their first argument, plaintiffs argue that the trial court erred by entering summary judgment in favor of defendants. We agree.

A. Standard of Review
The standard of review on a trial court's ruling on a motion for summary judgment is de novo. Forbis v. Neal, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007). The entry of summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen.Stat. § 1A-1, Rule 56(c) (2009). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." Collingwood v. G.E. Real Estate Equities, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citation omitted).

B. Analysis
In order to prevail in an action to establish an easement by prescription, a plaintiff must prove the following elements by the greater weight of the evidence: (1) that the use is adverse, hostile or under claim of right; (2) that the use has been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed throughout the twenty-year period.
Potts v. Burnette, 301 N.C. 663, 666, 273 S.E.2d 285, 287-88 (1981) (citation omitted). An easement by prescription is not favored in the law, and "it [is] the better-reasoned view to place the burden of proving every essential element . . . on the party who is claiming against the interests of the true owner." Id. at 667, 273 S.E.2d at 288. Thus, we discuss each element in turn.

i. Adverse Use
In North Carolina, "[t]he law presumes that the use of a way over another's land is permissive or with the owner's consent unless the contrary appears." Dickinson v. Pake, 284 N.C. 576, 580, 201 S.E.2d 897, 900 (1974) (citations omitted). "A mere permissive use of a way over another's land, however long it may be continued, can never ripen into an easement by prescription." Id. at 581, 201 S.E.2d at 900 (citation omitted). To establish a hostile use of another's land, it does not require a heated controversy or a manifestation of ill will; rather, a hostile use is a use of "such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right." Id. at 580-81, 201 S.E.2d at 900 (quotation omitted).
In Dickinson v. Pake, our Supreme Court held that the following evidence was sufficient to rebut the presumption that the use of a roadway was permissive and create an issue of fact for the jury to consider: the roadway had been used by the plaintiffs and other members of the public to reach the plaintiffs' property; the plaintiffs had performed the maintenance necessary to keep the road passable; permission to use the road had neither been sought nor given; and the plaintiffs testified they considered the road to be their own and had always had the right to use it. 284 N.C. at 582-84, 201 S.E.2d at 901-02; see also Potts, 301 N.C. at 668, 273 S.E.2d at 289; Cannon v. Day, 165 N.C.App. 302, 308, 598 S.E.2d 207, 212, disc. review denied, 359 N.C. 67, 604 S.E.2d 309 (2004). Although we note that in Dickinson our Supreme Court was reviewing a denial of a motion for directed verdict rather than a motion for summary judgment, the threshold question before the trial court at either stage of the litigation was whether there was sufficient evidence to rebut the presumption that the use of the roadway was permissive and carry the issue to the jury. Thus, the reasoning in Dickinson is applicable to the instant case.
*663 At the outset, we note that plaintiffs base a portion of their argument that the use of the soil road was adverse upon Howard Brown's conduct from 1950 through 1972. Plaintiffs are estopped from using Howard's conduct as the basis of their claim of adverse use because of the deed of release executed by Howard in which he acknowledged that his use of the soil road prior to 11 August 1999 had been intermittent and permissive, and released all of his rights in the soil road. However, from 1950 to 1972, Alice and Vardell also lived on the Brown estate. The affidavit of Foster Williams stated that he observed Vardell maintain the soil road. While Williams's affidavit focuses mainly on Howard's conduct, he also stated that he observed Vardell "doing the same sort of road maintenance work that [he] recall[ed] seeing his brother, Howard, do until Vardell's death in 1972." This included the use of a John Deere tractor to maintain the road, and building terraces across the soil road to keep the water from running down the middle of the road. Williams also averred that Vardell drove Howard and himself to work at the Firefox golf course and used the soil road to access Hoffman Road. In addition, surrounding neighbors used the soil road to access Hoffman Road. Williams never knew any member of the Brown family to seek permission to use the soil road. "They always acted like they were certain that they had a right to use it and needed no one's permission to do so." No one ever attempted to close the soil road, even though it was "well maintained and in current use."
Although the evidence in this case is not as compelling as the evidence of adverse use in Dickinson, we hold that plaintiffs presented sufficient evidence to create a genuine issue of material fact as to whether they could rebut the presumption of permissive use at trial.

ii. Open and Notorious Use
"The term adverse user or possession implies a user or possession that is not only under a claim of right, but that it is open and of such character that the true owner may have notice of the claim[.]" Snowden v. Bell, 159 N.C. 497, 500, 75 S.E. 721, 722 (1912). Plaintiffs presented evidence that Vardell openly maintained and used the soil road while he resided on the Brown Estate. Vardell's conduct was such that it would have placed the true owner on notice of his claim. See Johnson v. Stanley, 96 N.C.App. 72, 75, 384 S.E.2d 577, 579 (1989) ("Notice of a claim of right may be given in a number of ways, including . . . by open and visible acts such as repairing or maintaining the way over another's land." (citations omitted)).

iii. Continuous Use for Over Twenty Years
To establish a prescriptive easement, the adverse, open, and notorious use must have been continuous and uninterrupted for a period of at least twenty years. Dickinson, 284 N.C. at 581, 201 S.E.2d at 900. Williams averred that he observed Vardell maintain and use the soil road for twenty-two years from 1950 until his death in 1972.

iv. Substantial Identity
"To establish a private way by prescription, the user for twenty years must be confined to a definite and specific line. While there may be slight deviations in the line of travel there must be a substantial identity of the thing enjoyed." Speight v. Anderson, 226 N.C. 492, 496, 39 S.E.2d 371, 374 (1946) (citation omitted). In the instant case, there was no dispute as to the identity of the soil road. Plaintiffs submitted aerial photographs from 1939, 1955, 1966, and 1993, which show that the soil road remained in a fixed location for more than twenty years. Further, the 2002 settlement stated that a fourteen-foot-wide easement would be defined by a survey of the "existing roadway."
In the light most favorable to plaintiffs, the evidence presented was sufficient to establish that a genuine issue of material fact existed as to each element for the establishment of a prescriptive easement based upon Vardell's conduct from 1950 until 1972.

v. "Tacking"
Defendants argue that plaintiffs have not provided any evidence that they are entitled to "tack" any use of the soil road by Vardell based upon the lack of continuity of *664 possession or privity between Vardell and plaintiffs. We disagree.
"Tacking is the legal principle whereby successive adverse users in privity with prior adverse users can tack successive adverse possessions of land so as to aggregate the prescriptive period of twenty years." Dickinson, 284 N.C. at 585, 201 S.E.2d at 903 (citation omitted). However, if the adverse use of a roadway ripens into a prescriptive easement, the applicable legal principle is not tacking, but succession. Id. Where the "predecessors in interest acquired an easement by prescription; and . . . the easement was incidental to the use of what is now plaintiffs' property, it is an appurtenant easement that passe[s] by succession. . . ." Oshita v. Hill, 65 N.C.App. 326, 330, 308 S.E.2d 923, 926 (1983) (citation omitted); see also Dickinson, 284 N.C. at 586, 201 S.E.2d at 903 (stating that because an appurtenant easement "is incidental to the possession of the dominant tenement, every succeeding possessor is entitled to the benefit of it while it continues to exist as such an easement and he remains in possession.").
While the evidence before the trial court revealed that Howard signed the deed of release as discussed supra, Howard only owned a quarter interest in the Brown Estate in 1999.[4] Deans also owned a quarter interest in the Brown estate, which was conveyed to him upon his mother's death in 1993. Once a prescriptive easement was established, it attached to the Brown estate and "follow[ed] it into whosesoever hands it may come." Dickinson, 284 N.C. at 585-86, 201 S.E.2d at 903 (quotation omitted). Thus, Deans would be entitled to the benefits of any prescriptive easement as a successor in interest.

vi. Abandonment
Defendants make an oblique reference to the affirmative defense of abandonment in their brief. We note that the burden of proof to establish abandonment is on defendants. Skvarla v. Park, 62 N.C.App. 482, 486, 303 S.E.2d 354, 357 (1983). Further, the issue of abandonment is largely a matter of intention and is a question for a jury to determine. Miller v. Teer, 220 N.C. 605, 613, 18 S.E.2d 173, 178 (1942).

III. Conclusion
The trial court's 23 September 2009 order granting summary judgment in favor of the moving defendants is reversed. We must also reverse the 4 January 2010 order granting summary judgment in favor of the non-moving defendants pursuant to Rule 56(c) of the Rules of Civil Procedure.
REVERSED.
Judges BRYANT and ERVIN concur.
NOTES
[1] Deans owned 11/12 of the Brown Estate. Fred McInnis, Sadie's child, owned 1/12. Deans petitioned to partition the property. The record does not indicate the disposition of that petition.
[2] It does not appear from the record that Deans and Williams ever sought to enforce the settlement agreement against Mace or Edwards.
[3] Plaintiffs' amended complaint also listed M. Davidson Builders, Inc. as a party defendant. However, the record is devoid of any order disposing of plaintiff's claims against this party.
[4] The record does not disclose how Howard acquired a quarter interest in the Brown estate nor does it disclose how Vardell's interest in the property was descended upon his death.