DIETZ, Judge.
 

 *527
 
 Andrew and Bethany Slack own a home on several acres of land in Orange County. There is a gravel road along the eastern edge of their property. That private drive has existed in one form or another since at least the 1940s. This appeal concerns who, if anyone, has an easement to use that gravel road to access other properties north of the Slacks' property.
 

 At the summary judgment hearing below, Plaintiffs asserted a slew of alternative legal theories touching on nearly every form of express and implied easement known to the law. We address each theory in turn below but ultimately conclude that the government plaintiffs-Carrboro, Chapel Hill, and Orange County-do not possess any easement rights over the Slacks' property. We therefore reverse and remand that portion of the trial court's summary judgment order for entry of judgment in favor of the Slacks. We affirm the trial court's entry of summary judgment in favor of Plaintiff William Inman on his prescriptive easement claim, but vacate and remand the trial court's permanent injunction for further proceedings in light of the reasoning set forth in this opinion.
 

 Facts and Procedural History
 

 This dispute involves four adjacent tracts of land which, for purposes of illustration, can be envisioned as four quadrants on a map. In the northwest quadrant (the upper left) is a roughly 100-acre tract owned by the Town of Carrboro, the Town of Chapel Hill, and Orange County. Proceeding clockwise from there, the northeast quadrant is William Inman's property, including his home. To the southeast lies the property of the Episcopal Church of the Advocate. To the southwest is the property of Andrew and Bethany Slack, including their home.
 

 On the border between the Slack property and the Church property is a gravel road. The road extends from the southern border of the properties all the way to the Inman and government properties to the north.
 

 This gravel road is the heart of the litigation. The road has existed at least since the 1940s and all of the deeds in the Slacks' chain of title reference this "private road" to describe the eastern border of the Slacks' property.
 

 On 9 August 1965, the Slacks' predecessors-in-interest, the Cardens, executed a deed granting a "perpetual easement" that "is appurtenant to and runs with the land" to Grady & Dryer Development Company and James Watson. The easement granted a thirty-foot
 
 *531
 
 right of way on the eastern edge of the Slacks' property (along the border with the Church
 
 *528
 
 property) to permit ingress and egress to the "Byrd Farm," which is now the properties owned by Inman and the government. The deed required Grady & Dryer Development Company and Watson to "pave a roadway along said right of way," to "landscape said right of way," and to "cause same to be passable for ingress and egress at all times during construction."
 

 At the time the parties executed this instrument, Grady & Dryer Development Company and James Watson apparently had plans to buy the Byrd Farm and to develop it. But that did not happen. These developers did not own the Byrd Farm property when the Cardens executed the deed and they never acquired title at any future point.
 

 Roughly a month later, on 3 September 1965, the predecessor-in-interest to the Church property (the property to the east of the Slacks) granted an easement appurtenant to the owners of the Byrd Farm. Unlike the easement involving the Slacks' property, which was between the Slacks' predecessors-in-interest and third parties, this easement was between the owner of the Church property and the owner of the Byrd Farm to the north (now the Inman and government properties). The easement described a sixty-foot right of way in areas south of the Slacks' property that then narrowed to a thirty-foot easement along the western border of the Church property adjacent to the Slacks' property. If this easement were combined with the one concerning the Slacks' property, together they would create a continuous, sixty-foot right of way leading to the Byrd Farm property to the north.
 

 In 2015, the Slacks began re-grading the gravel road on the eastern border of their property and, in doing so, shifted that gravel road slightly westward, entirely onto their property. The Slacks also began constructing a fence separating their property from the Church property. At that point, the government plaintiffs and Inman objected, arguing that they possessed an easement over the Slacks' property-one that was contiguous with the express easement appurtenant on the Church property-and that this easement prohibited the Slacks from moving the gravel road or constructing a fence on their property line.
 

 This lawsuit followed, and the trial court ultimately entered summary judgment in favor of the Plaintiffs, concluding that they possessed an easement along the eastern border of the Slacks' property. The trial court permanently enjoined the Slacks from moving or impeding the gravel road, or placing any fence along the eastern border of the Slacks' property. The Slacks timely appealed.
 

 *529
 

 Analysis
 

 We review the trial court's grant of summary judgment
 
 de novo
 
 .
 
 Builders Mut. Ins. Co. v. North Main Constr., Ltd
 
 .,
 
 361 N.C. 85
 
 , 88,
 
 637 S.E.2d 528
 
 , 530 (2006). Summary judgment is proper where there is no genuine issue as to any material fact and a party is therefore entitled to judgment as a matter of law.
 
 Supplee v. Miller-Motte Bus. Coll., Inc
 
 .,
 
 239 N.C. App. 208
 
 , 228,
 
 768 S.E.2d 582
 
 , 597 (2015). Plaintiffs asserted a number of legal theories to support their motion for summary judgment and the trial court's order does not identify the particular theory or theories on which it relied. We therefore address each of Plaintiffs' theories in turn below.
 

 I. Express Easement Appurtenant
 

 Plaintiffs first argue that they hold an express easement appurtenant over a thirty-foot right of way along the eastern border of the Slacks' property.
 

 An easement appurtenant "runs with the land," and is a "right to use the land of another, i.e., the servient estate, granted to one who also holds title to the land benefitted by the easement, i.e., the dominant estate."
 
 Brown v. Weaver-Rogers Assocs., Inc.
 
 ,
 
 131 N.C. App. 120
 
 , 123,
 
 505 S.E.2d 322
 
 , 324 (1998). The easement "is owned in connection with other real estate and as an incident to such ownership."
 
 Shingleton v. State
 
 ,
 
 260 N.C. 451
 
 , 454,
 
 133 S.E.2d 183
 
 , 185 (1963). This distinguishes an easement appurtenant from an easement in gross, which is a personal license to the grantee and does not run with the land itself.
 
 Brown
 
 ,
 
 131 N.C. App. at 123
 
 ,
 
 505 S.E.2d at 324
 
 .
 

 *532
 
 In 1965, the Slacks' predecessors-in-title, the Cardens, granted to Grady & Dryer Development Company and James Watson a thirty-foot easement along the edge of the Cardens' property. This easement allowed the grantees to access the Byrd Farm (the property now owned by Plaintiffs) from a nearby road bordering the Cardens' property. The easement granted "a perpetual right and easement, for ingress and egress ... it being agreed that the right and easement hereby granted is
 
 appurtenant to and runs with the land
 
 ." (Emphasis added.)
 

 This language unquestionably indicates an
 
 intent
 
 to grant an easement appurtenant that runs with the Carden property (the servient estate) for the benefit of the Byrd Farm (the dominant estate). But there is a problem. The grantees, Grady & Dryer Development Company and James Watson, did not own the Byrd farm (the dominant estate) at the time the Cardens granted this purported easement appurtenant. Indeed,
 
 *530
 
 these grantees
 
 never
 
 owned the Byrd Farm-the record suggests that they planned to buy the property at some point, but the sale never took place.
 

 Plaintiffs contend that "it makes no difference that Grady & Dryer Development Company and James A. Watson never acquired any interest in the [Byrd Farm] because the easement granted by Carden was not 'in gross' and purely personal to those grantees." Thus, Plaintiffs reason, because the easement expressly states that it is not a personal license and that it runs with the land, it necessarily must be an easement appurtenant.
 

 We reject this argument. An easement appurtenant must be "granted to one who also holds title to the land benefitted by the easement, i.e., the dominant estate."
 
 Brown
 
 ,
 
 131 N.C. App. at 123
 
 ,
 
 505 S.E.2d at 324
 
 . "The easement attaches to the dominant estate and passes with the transfer of the dominant estate as 'an appurtenance thereof.' "
 

 Id.
 

 A landowner cannot create an easement appurtenant in a transaction with a complete stranger to the dominant estate.
 
 See
 

 Woodring v. Swieter
 
 ,
 
 180 N.C. App. 362
 
 , 368,
 
 637 S.E.2d 269
 
 , 275-76 (2006). Although easements appurtenant generally are favorable to the owner of the dominant estate, they are "owned in connection with [the dominant estate] and as an incident to such ownership."
 
 Shingleton
 
 ,
 
 260 N.C. at 454
 
 ,
 
 133 S.E.2d at 185
 
 . In other words, they create property rights in the dominant estate. These rights cannot be unilaterally imposed on an unwilling landowner; the owner of the dominant estate must accept the creation of this property right. Thus, to create an easement appurtenant, the transaction that creates these rights and obligations must be between the owner of the servient estate and the owner of the dominant estate.
 
 Brown
 
 ,
 
 131 N.C. App. at 123
 
 ,
 
 505 S.E.2d at 324
 
 .
 

 Here, the transaction was between the owner of the servient estate and third parties that did not own the dominant estate. As a result, despite language indicating an intent to create an easement appurtenant, this transaction created only an easement in gross granting personal rights to those third parties.
 

 II. Express Easement by Reservation
 

 Plaintiffs next argue that that they possess an express easement by reservation because "every deed in the Slacks' chain of title creates an easement by reservation over the 'private road' running to the 'Byrd land' from which [Plaintiffs'] properties originate."
 

 An easement by reservation or exception arises when the "grantor reserves something arising out of the thing granted" or "withdraws
 
 *531
 
 from the effect of the grant some part of the thing itself."
 
 Central Bank & Trust Co. v. Wyatt
 
 ,
 
 189 N.C. 107
 
 , 109,
 
 126 S.E. 93
 
 , 94 (1925). Plaintiffs focus their argument on the lack of any description in these deeds of the dominant estate and how this Court can look to extrinsic evidence to identify the intended dominant estate that benefits from this private road. But this overlooks a more fundamental problem with this argument: none of the deeds in the Slacks' chain of title contain any reservation or exception.
 

 To be sure, each deed references a "private road" on the eastern border of the Slack property. But the deeds do so in describing
 
 *533
 
 the boundaries of the property conveyed, which is identified as a tract of real estate in Orange County, North Carolina:
 

 [B]ounded by J.O. Franklin, the old Byrd Farm, now McGhee, and a private road, and being more particularly described as follows:
 

 BEGINNING in the center of said private road near the stable, running thence with said road North 250 feet to a bend in the road; thence North 35 degrees East 100 feet to another bend in the road; thence North 48 degrees East 369 feet to the old Byrd line, now McGhee ...
 

 Although an easement by reservation or exception need not use the words "reserve" or "except" to be effective, it must at least indicate some intent to withhold a portion of the conveyance.
 
 Borders v. Yarbrough
 
 ,
 
 237 N.C. 540
 
 , 542,
 
 75 S.E.2d 541
 
 , 543 (1953). These deeds do not do so. The only language concerning this private road is descriptive, explaining the eastern boundary of the property conveyed. Accordingly, the language on which Plaintiffs rely is insufficient to create an express easement by reservation or exception.
 

 III. Implied Easement by Dedication
 

 Plaintiffs next contend that they possess an implied easement by dedication.
 
 [1]
 
 "Dedication is a form of transfer whereby an individual grants to the public rights of use in his or her lands."
 
 Metcalf v. Black Dog Realty, LLC
 
 ,
 
 200 N.C. App. 619
 
 , 631,
 
 684 S.E.2d 709
 
 , 718 (2009). Dedication may be express or implied.
 

 Id.
 

 *532
 
 "[A]n implied dedication of property for public use requires (1) an offer of dedication, and (2) an acceptance of this offer by a proper public authority."
 
 Id.
 
 at 639,
 
 684 S.E.2d at 723
 
 . "When proving implied dedication, where no actual intent to dedicate is shown, the manifestation of implied intent to dedicate must clearly appear by acts which to a reasonable person would appear inconsistent and irreconcilable with any construction except dedication of the property to public use."
 
 Id.
 
 at 640,
 
 684 S.E.2d at 723
 
 . "Dedication is an exceptional and peculiar mode of passing title to an interest in land" and, thus, "courts will not lightly declare a dedication to public use."
 
 Id.
 
 at 631,
 
 684 S.E.2d at 718
 
 .
 

 Plaintiffs argue that there is an implied easement by dedication based on references to a "private road" or other right of way in "the Slacks' chain of title and those pertinent to other properties contiguous to" the Slacks' property. But nothing in these recorded instruments indicates that the private parties involved intended to dedicate an easement for public use. Likewise, there is no indication that any public authority expressly or implicitly accepted a dedication. Thus, Plaintiffs have not shown that these recorded instruments are "inconsistent and irreconcilable with any construction except dedication of the property to public use."
 
 Id.
 
 at 640,
 
 684 S.E.2d at 723
 
 . Likewise, although the Slacks later dedicated a five-foot stormwater easement to the public in the path of this purported thirty-foot easement, nothing in that express dedication reflects an implied dedication of a thirty-foot easement for ingress and egress. Indeed, because that stormwater easement accompanied creation of a bioretention basin along the path of this thirty-foot easement, it arguably is inconsistent with dedication of a broader thirty-foot easement at that same location. We therefore reject Plaintiffs' argument concerning an implied easement by dedication.
 

 IV. Implied Easement by Plat
 

 Plaintiffs next contend that there is an implied easement by plat. "[W]here land is sold in reference to a plat or map, but the dedication of the land has not been formally accepted by the appropriate authority, purchasers of land who buy property relying on the plat still acquire an easement in those right-of-ways."
 
 Price v. Walker
 
 ,
 
 95 N.C. App. 712
 
 , 715,
 
 383 S.E.2d 686
 
 , 688 (1989). This is so because a "grantor who grants land described with reference to a plat showing a street is equitably estopped" from denying the existence of an easement over that street
 
 *534
 
 "to a purchaser."
 
 Webster's Real Estate Law in North Carolina
 
 § 15.15. Importantly, this type of easement arises only "when the purchaser whose transaction relies on the plat is conveyed the land."
 
 Price
 
 ,
 
 95 N.C. App. at 715
 
 ,
 
 383 S.E.2d at 688
 
 .
 
 *533
 
 Applying this precedent here, Plaintiffs' argument fails. The Slacks and their predecessors-in-interest never granted anything to Plaintiffs. Creation of an implied easement by plat is grounded in principles of estoppel; the easement is created because a grantee purchases property in reliance on a right of way or other easement reflected in the plat at the time of the conveyance.
 

 Id.
 

 ;
 
 Webster's Real Estate Law in North Carolina
 
 § 15.15. Because the Slacks never conveyed any property to Plaintiffs, the easement by plat theory is inapplicable. Accordingly, we reject this argument as well.
 

 V. Implied Easement by Estoppel
 

 Plaintiffs next claim that they possess an implied easement through the equitable doctrine of estoppel. They argue that the Slacks are estopped from denying the existence of an easement on the eastern border of their property "because the Slacks' conduct in this case renders that assertion contrary to equity." Specifically, they contend that the Slacks acknowledged the easement in permit applications during the construction of the Slacks' home through notations indicating a right of way existed on the eastern portion of the property (although these permitting applications did not identify who, if anyone, was entitled to use that right of way). They also argue that the Slacks or their predecessors-in-title "remained silent at times they should have spoken," including when Inman repeatedly used the gravel road to access his own home, and when the government plaintiffs publicly discussed plans to build "affordable housing, open space, and possibly a school site" on their property and, in those public discussions, indicated that they would use the right of way across the Slacks' property to access these new developments.
 

 Our Supreme Court has held that an easement may arise where one party induces another "innocently and ignorantly" to "expend money or labor in reliance on the existence of such an easement."
 
 Delk v. Hill
 
 ,
 
 89 N.C. App. 83
 
 , 87,
 
 365 S.E.2d 218
 
 , 221 (1988). Inman's arguments on this issue are better characterized as claims for a prescriptive easement (on which, as explained below, he prevails) and we address them there. We reject the government plaintiffs' arguments because they have not presented any evidence that they innocently and ignorantly were induced to expend money or labor in reliance on an easement.
 

 To be sure, the government plaintiffs have plans to develop their property. But even if the preliminary work on those future plans could be considered "money or labor" spent on the project, they have not shown-indeed, they do not even argue-that they did so
 
 in reliance
 
 on an easement across the Slacks' property. The only arguable reference to reliance
 
 *534
 
 in the government plaintiffs' brief is in relation to a public hearing in 2007. The government plaintiffs assert that access to their property from the south "was considered, during those 2007 discussions, critical for access to the tract and its future uses, notwithstanding that those uses are still indeterminate." But the government possesses the power of eminent domain. Thus, indicating that a roadway across a property owner's land will be necessary to a future public project does not in any way suggest that the government is relying on possession of an existing easement.
 

 In any event, as with all estoppel arguments, the government plaintiffs' implied easement by estoppel argument is grounded in "principles of equity" that are "designed to aid the law in the administration of justice when without its intervention injustice would result."
 
 Thompson v. Soles
 
 ,
 
 299 N.C. 484
 
 , 486,
 
 263 S.E.2d 599
 
 , 602 (1980). But the equities do not weigh in the government plaintiffs' favor nearly as strongly as they contend. For example, the government plaintiffs approved the Slacks' request to build a bioretention basin in the path of the purported easement that is inconsistent with the government's claim that it believed it possessed a right of way across that same stretch of land. And over time the government has been equivocal (at best) in its own
 
 *535
 
 assessment of whether it possesses an easement across the Slacks' property, at one point even suggesting in writing that "we have determined that the access easement is a 30-foot-wide [
 
 sic
 
 ] and outside of the Slack's eastern property line." Simply put, even if the government plaintiffs could show that they were "innocently and ignorantly" induced into believing they possessed an easement on the Slacks' property (and they have not), they have not shown that the equities weigh sufficiently in their favor to compel creation of an implied easement where one does not exist in law. Accordingly, we reject the government plaintiffs' implied easement by estoppel arguments.
 

 The government plaintiffs also cite cases (not in the implied easement context) involving the doctrine of quasi-estoppel, which provides that when "one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it."
 
 Redev. Comm'n of City of Greenville v. Hannaford
 
 ,
 
 29 N.C. App. 1
 
 , 4,
 
 222 S.E.2d 752
 
 , 754 (1976). But the government has not identified any transaction or instrument that the Slacks chose to accept that indicated the government plaintiffs possessed an easement across their land. The only remotely relevant evidence concerns the permit applications described above, which marked a right of way where the gravel road exists across their property. But as we noted in discussing those permit
 
 *535
 
 applications above, they do not indicate that the
 
 government plaintiffs
 
 had a right to use that right-of-way. Accordingly, quasi-estoppel is inapplicable here.
 

 Because we reject all of the legal theories on which the government plaintiffs assert easement rights in the Slacks' property, we reverse the trial court's entry of summary judgment in favor of the government plaintiffs and remand for entry of summary judgment in favor of the Slacks on those claims.
 

 VI. Easement by Prescription
 

 We thus turn to the final theory in this case-easement by prescription-which only Inman asserts on appeal. To prevail on a prescriptive easement claim, the claimant must establish: "(1) that the use is adverse, hostile, or under claim of right; (2) that the use has been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed throughout the twenty-year period."
 
 Myers v. Clodfelter
 
 , --- N.C. App. ----, ----,
 
 786 S.E.2d 777
 
 , 779-80 (2016).
 

 There is a rebuttable presumption that use of a private road across another landowner's property is permissive, but our courts have long held that this presumption can be rebutted where the claimant shows that she maintained the private roadway, for example by grading or gravelling it, or repeatedly clearing the path to permit travel.
 

 Id.
 

 at ----,
 
 786 S.E.2d at 781
 
 . These acts indicate a claim of right to use the roadway and thus "manifest and give notice that the use is being made under a claim of right."
 

 Id.
 

 at ----,
 
 786 S.E.2d at 780
 
 .
 

 Here, there is uncontested evidence in the record that Inman maintained a private right of way across the eastern portion of the Slacks' property by using a gravel road located there to access his property and by maintaining the gravel road through landscaping, mowing, and laying gravel. The record indicates that Inman's use and maintenance of this gravel road was under claim of right, open and notorious, and continuous and uninterrupted for a period of at least twenty years. Accordingly, the trial court properly entered summary judgment in favor of Inman on his prescriptive easement claim.
 

 But it does not follow from this conclusion that the remainder of the trial court's order with respect to Inman is appropriate. Inman is entitled to use and maintain a right-of-way across the Slacks' property to access his own property. But the trial court's order goes further and permanently
 
 *536
 
 enjoins the Slacks from "erecting or placing any fencing or impediment within the thirty (30) most eastern feet of their property" or from "erecting or placing any fencing or impediment on their property that in any way obstructs
 
 *536
 
 [Inman's] use of the gravel road in its existing location."
 

 The record indicates that the Slacks, too, use and maintain this gravel road on their property. And they wish to prevent trespassers-those other than Inman-from using that road. The Slacks are entitled to erect a gate or other improvements along that gravel road so long as it does not prevent Inman from "the reasonable use and enjoyment of the easement."
 
 Hundley v. Michael
 
 ,
 
 105 N.C. App. 432
 
 , 435,
 
 413 S.E.2d 296
 
 , 298 (1992). On appeal, the parties did not address the extent to which a gate or similar improvements to the Slacks' property would impact Inman's use and enjoyment of the easement, and we are unable to answer that question from the record before us.
 

 Similarly, although property owners cannot unilaterally move the location of an express easement whose boundaries are recorded,
 
 see
 

 A. Perin Dev. Co., LLC v. Ty-Par Realty, Inc
 
 .,
 
 193 N.C. App. 450
 
 , 452-53,
 
 667 S.E.2d 324
 
 , 326 (2008), the parties did not address on appeal which portion of the gravel road Inman used and maintained, and thus in which he acquired a prescriptive easement. We therefore cannot adjudicate whether the Slacks, by shifting the gravel road slightly westward and building a fence along their property line, interfered with the reasonable use and enjoyment of the easement that Inman acquired through prescription.
 

 We therefore vacate the trial court's entry of a permanent injunction in favor of Inman and remand this matter to the trial court for further proceedings.
 

 Conclusion
 

 We reverse the trial court's entry of summary judgment on the claims asserted by the Town of Carrboro, Town of Chapel Hill, and Orange County, and remand for entry of judgment in favor of Andrew and Bethany Slack on those claims. We affirm the entry of summary judgment in favor of William Inman on his prescriptive easement claim but vacate the trial court's corresponding injunctive relief. We remand the matter for the trial court to determine what, if any, injunctive relief is appropriate in light of this opinion.
 

 REVERSED IN PART; AFFIRMED IN PART; VACATED IN PART; AND REMANDED.
 

 Judges ELMORE and HUNTER, JR. concur.
 

 [1]
 

 The government plaintiffs appear to abandon this argument on appeal, but the trial court considered it, and the Slacks address it, so we will do so as well in our
 
 de novo
 
 review of the trial court's order.
 
 Builders Mut. Ins. Co.
 
 ,
 
 361 N.C. at 88
 
 , 637 S.E.2d at 530.