IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-998

Filed 3 June 2026

Franklin County, No. 23CVS000830-340

PEGGY P. ALSTON, Plaintiff,

v.

LLOYD W. JACOX and PROVIDENCE BANK, Defendants.

Appeal by Defendant from order and judgment entered 8 July 2025 by Judge Shamieka L. Rhinehart in Franklin County Superior Court. Heard in the Court of Appeals 11 March 2026.

*Law Office of Jason R. Page, PLLC, by Jason R. Page, for Plaintiff-Appellee.*

*Pendergrass Law Firm, PLLC, by James K. Pendergrass, Jr., for Defendant-Appellant.*

GRIFFIN, Judge.

Defendant Lloyd W. Jacox appeals[1] from the trial court's order and judgment finding Plaintiff Peggy P. Alston is entitled to a prescriptive easement on Defendant's property. Defendant argues (1) Plaintiff's evidence fails to establish every element of a prescriptive easement as a matter of law, (2) the location and extent of the easement are not sufficiently described, and (3) the width and scope of the prescriptive

---

[1] Defendant Providence Bank does not appeal, so any reference to "Defendant" in this opinion refers to Lloyd W. Jacox.

easement are inadequately established. We affirm the trial court.

## I. Factual and Procedural Background

Although a resident of Alabama, Plaintiff owns five parcels of land ("Alston Property") in Franklin County, North Carolina. In 2018, Defendant purchased a parcel of land ("Jacox Property") contiguous to Plaintiff's, from the Tharrington family.

The only way to access the Alston Property is to travel Roy Tharrington Road until it ends and then proceed onto an existing pathway across the Jacox Property, the alleged prescriptive easement, from the end of Roy Tharrington Road to the Alston Property. For as long as she can remember, Plaintiff used that pathway on the Jacox Property to access her land. There is no record evidence Plaintiff asked for permission to use the pathway nor is there record evidence of permission given to Plaintiff.

Upon the death of his father, Plaintiff's husband acquired a 50% interest in the Alston Property. In 1992, Plaintiff's brother-in-law conveyed his 50% interest in the property to Plaintiff and her husband. Upon this conveyance, Plaintiff and her husband owned 100% of the Alston Property. In 2021, Plaintiff became the sole owner of the property when her husband died. Plaintiff and her husband, before his death, used to travel to the Alston Property several times throughout the years. However, Plaintiff has not personally visited the Alston Property since 2007.

Between 1998 and 2023, Plaintiff had her forester consultant, Fred Hampton, conduct yearly inspections of the Alston Property and, more sporadically, provided forestry services on the property. Hampton used the alleged prescriptive easement to access the Alston Property. Additionally, in the past couple of decades, trucks have used the pathway a few times to remove logs from the Alston Property.

In 1998, Plaintiff gave Steve Tharrington[2] permission to hunt on the Alston Property. Steve Tharrington, the president of the Community Gun Club, used the pathway to access the Alston Property, as well. In 2012, Plaintiff entered into a hunting lease with the Community Gun Club. This lease required the club to maintain the pathway; to accomplish this, Tharrington rocked the route, installed pipe, created ditches, bushhogged the path, and cut limbs along the pathway.

In 2016, before Defendant purchased the Jacox Property, the Tharrington family, via Diana Bartholomew acting as a representative, gave permission to the Community Gun Club, including Steve Tharrington, to access and hunt on the Jacox Property. Permission extended until 2018.

Defendant moved onto the Jacox Property in 2023. In attempts to deny Steve Tharrington access to the Jacox Property, Defendant began locking his gate. Furthermore, Defendant placed logs and ropes on the alleged prescriptive easement to prohibit access to the pathway.

---

[2] Steve Tharrington was not an owner of the Tharrington family property, the now Jacox Property.

On 22 August 2023, Plaintiff filed a complaint and motion for preliminary injunction seeking a prescriptive or implied easement across the Jacox Property. After hearing oral arguments, on 8 July 2025, the trial court filed an order and judgment finding Plaintiff was entitled to a prescriptive easement on the Jacox Property. The trial court identified the easement as "the pathway which forms after one travels Roy Tharrington Road until it ends" and "the white line on Plaintiff's Exhibit #4." Defendant timely appeals.

## II.    Analysis

Defendant contends the evidence does not establish each element of a prescriptive easement as a matter of law. He also argues the trial court's order inadequately describes the easement's location, extent, width, and scope.

When a "trial court sits without a jury, the standard of review on appeal is whether there was competent evidence to support the trial court's findings of fact and whether the conclusions of law were proper in light of such facts." *Anthony Marano Co. v. Jones*, 165 N.C. App. 266, 267–68, 598 S.E.2d 393, 395 (2004) (citing *Chem. Realty Corp. v. Home Fed. Sav. & Loan Ass'n,* 84 N.C. App. 27, 37, 351 S.E.2d 786, 792 (1987)). "'The trial court's findings of fact are binding on appeal as long as competent evidence supports them, despite the existence of evidence to the contrary.'" *Buysse v. Jones*, 256 N.C. App. 429, 433, 808 S.E.2d 334, 337 (2017) (citation omitted). "Unchallenged findings of fact are binding on appeal." *Dep't of Transp. v. Mountain Vills., LLC*, 286 N.C. App. 246, 249, 880 S.E.2d 438, 442 (2022) (citation omitted). On

appeal, we treat a finding of fact that is essentially a conclusion of law as a conclusion of law. *Wiseman Mortuary, Inc. v. Burrell*, 185 N.C. App. 693, 697, 649 S.E.2d 439, 442 (2007) (citation omitted). We review conclusions of law de novo. *Anthony Marano Co.*, 165 N.C. App. at 68, 598 S.E.2d at 395 (citation omitted).

For a successful prescriptive easement claim, a plaintiff must demonstrate that (1) "the use is adverse, hostile, or under claim of right," (2) "the use has been open and notorious such that the true owner had notice," (3) the use has been continuous for at least twenty years, and (4) "there is substantial identity of the easement claimed throughout the twenty-year period." *Town of Carrboro v. Slack*, 261 N.C. App. 525, 535, 820 S.E.2d 527, 535 (2018) (citation omitted). "'Prescriptive easements are not favored in the law, and the burden is therefore on the claiming party to prove every essential element thereof.'" *Dep't of Transp.*, 286 N.C. App. at 248, 880 S.E.2d at 446–47 (citation omitted). Additionally, the "law presumes that the use of a way over another's land is permissive or with the owner's consent unless the contrary appears." *Dickinson v. Pake*, 284 N.C. 576, 580, 201 S.E.2d 897, 900 (1974) (citations omitted). "A mere permissive use of a way over another's land, however long it may be continued, can never ripen into an easement by prescription." *Id.* at 581, 201 S.E.2d at 900 (citation omitted). A plaintiff's agent's use is sufficient to satisfy the elements of a prescriptive easement. *See Perry v. Williams*, 84 N.C. App. 527, 529, 353 S.E.2d 226, 228 (1987); *Rathburn v. Hawkins*, 56 N.C. App. 82, 86, 286 S.E.2d 827, 830 (1982) (citation omitted).

Within the meaning of a prescriptive easement, "adverse" means to have opposing interests. *Pitcock v. Fox*, 119 N.C. App. 307, 310, 458 S.E.2d 264, 267 (1995) (citation omitted). Moreover, "hostile" use entails "'use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right.'" *Id.* (citing *Dickinson*, 284 N.C. at 581, 201 S.E.2d at 900). Further, a "claim of right" is "an intention to claim and use land as one's own." *Id.* (citation omitted). Still, the "term 'claim of right' is widely considered to be merely a restatement of the hostility requirement." *Johnson v. Stanley*, 96 N.C. App. 72, 75, 384 S.E.2d 577, 579 (1989) (citations omitted).

It is critical for a party to give notice of the alleged easement to the actual owner to hold a claim of right. *Pitcock*, 119 N.C. App. at 310, 458 S.E.2d at 267 (citation omitted). A party may give notice by open and visible conduct such as making repairs or maintaining the true owner's land. *Id; see also Cannon v. Day*, 165 N.C. App. 302, 308, 598 S.E.2d 207, 211 (2004) (explaining that a party's maintenance of a prescriptive easement helps rebut the presumption of permissive use and establish that the use was hostile and under a claim of right). These acts also contribute to satisfying the open and notorious element of a prescriptive easement. *See Yadkin Valley Land Co., L.L.C. v. Baker*, 141 N.C. App. 636, 639, 529 S.E.2d 685, 688 (2000); *Deans v. Mansfield*, 210 N.C. App. 222, 228, 707 S.E.2d 658, 663 (2011) (citations omitted). "The fact that plaintiffs have not personally used and maintained

the road on a frequent basis . . . is not significant." *Oshita v. Hill*, 65 N.C. App. 326, 330, 308 S.E.2d 923, 926 (1983) (emphasis added).

The element of continuous use depends on the nature and purpose of the easement. *Concerned Citizens of Brunswick Cnty. Taxpayers Ass'n v. State ex rel. Rhodes*, 329 N.C. 37, 52, 404 S.E.2d 677, 686 (1991) (citation omitted). Such continuity does not need to be perpetually unceasing; rather, the easement must be used with such regularity as to provide notice to the alleged servient owner. *Id.* at 52, 404 S.E.2d at 686–87 (citation omitted). "To effectively defeat a prescriptive right, an interruption of the use must be accompanied by some act of the owner which *prevents* the use of the easement;" even barricades placed by a defendant in front of a prescriptive easement's path does not destroy continuity. *Id.* at 52, 404 S.E.2d at 686 (citation omitted).

In *Caldwell v. Branch,* our Court decided it did not need to address whether the continuous twenty-year period began from 1958 because the twenty years before the defendant blocked the driveway, from 1971 to 2003, sufficiently satisfied the continuous use during a required twenty-year period. 181 N.C. App. 107, 113, 638 S.E.2d 552, 556–57 (2007). However, our Court did not indicate the continuous twenty years element must be the twenty years directly preceding a defendant's prohibitions, only that it did not need to continue analyzing earlier years after the twenty-year requirement was satisfied. *See id.* Therefore, the continuous use of

twenty years does not necessarily need to be the twenty years directly preceding from when a defendant blocks a pathway. *See id.*

Furthermore, when adverse use of a road for more than twenty years ripens into an easement by prescription, succession is the applicable legal principle. *Dickinson*, 284 N.C. at 585, 201 S.E.2d at 903 (citations omitted); *see also West v. Slick*, 313 N.C. 33, 41–42, 326 S.E.2d 601, 606–07 (1985) (showing that, since testimony from 1912 was considered, the applicable period does not have to be directly preceding the challenge). Thus, except as prevented by transfer terms or the manner/terms of the creation of the easement appurtenant thereto, a person who succeeds to the possession of a dominant estate therefore succeeds to the privileges of the use of the servient estate authorized by the easement. *Dickinson*, 284 N.C. at 585, 201 S.E.2d at 903 (citations omitted). Once an easement appurtenant is created, so long as it exists, it "'attaches to the possession of the dominant land and follows it into whosesoever hands it may come.'" *Id.* (citation omitted).

"'While there may be slight deviations in the line of travel there must be a substantial identity of the thing enjoyed.'" *Oshita*, 65 N.C. App. at 329, 308 S.E.2d at 926 (citation omitted). A prescriptive easement's substantial identity requires a means to determine the location of the easement with reasonable specificity. *Concerned Citizens of Brunswick Cnty. Taxpayers Ass'n*, 329 N.C. at 47, 404 S.E.2d at 683.

"'In the case of easements arising by prescription, the character and pattern of the user during the whole period during which the easement came into being determines its extent.'" *Blevins v. Welch*, 137 N.C. App. 98, 104, 527 S.E.2d 667, 672 (2000) (citation omitted). The uses define the scope of the easement. *See id.* If a conveyance is silent as to the scope of an easement, a reasonable use of it is implied. *Charlotte v. BMJ of Charlotte, LLC*, 196 N.C. App. 1, 17, 675 S.E.2d 59, 69 (2009) (citation omitted).

Here, the trial court sat without a jury. Further, Defendant failed to challenge any findings of fact. Therefore, all the trial court's findings of fact are binding on appeal.

According to the trial court's Finding of Fact 8, Plaintiff and her husband married in 1959. Finding of Fact 15 states Plaintiff recalled the alleged easement existed for as long as she could remember and she first used the pathway before she was married, prior to 1959. By 1992, Plaintiff and her husband owned 100% of the Alston Property. Plaintiff and her husband, as primary residents of Alabama, did not reside on the Alston Property, so the nature and purpose of the easement is not one that would resemble use by a primary resident. Since the easement is the only way to access the Alston Property, Plaintiff and her husband used the pathway every time they traveled to their property; the couple visited many times throughout several years, as Finding of Fact 22 states. Also, there were a number of other users, including agents of Plaintiff and her husband. Plaintiff's husband visited the Alston

Property until his death in 2021. Finding of Fact 12 states the "pathway has been used for many years for trucks to travel to get logs off the property." Moreover, Steve Tharrington used the pathway since he was a young boy, around ten years old, in the 1980s, as indicated by Finding of Fact 17, and continues to use it as an adult (forty-nine years old as of early 2025) and president of the Community Gun Club. Hampton also used the pathway more than yearly to conduct inspections on the property and perform forestry services. The combination of users using the pathway for varied purposes constitutes such regular use to give notice to the servient landowners. The trial court's findings support that the pathway's use has been continuous for at least twenty years.

Defendant claims the use was not open and notorious because the timbering was not regular enough and because his predecessor, the Tharrington family, gave the Community Gun Club, including Steve Tharrington, permission to access and hunt on the Jacox Property. We acknowledge a representative for the Tharrington heirs gave the Community Gun Club permission to access and hunt on the Jacox Property from 2016 through 2018. However, assuming arguendo that this permission would undermine the hostile element of a prescriptive easement, there are sufficient findings of fact to support the existence of the twenty-year period of the easement prior to 2016. For instance, the twenty-year period from 1995 to 2015 establishes the easement's use was adverse, hostile, or under a claim of right. There is no requirement that a prescriptive easement must be for the twenty years directly

preceding a dispute; rather, only *a* twenty-year period is required. *See Caldwell*, 181 N.C. App. at 113, 638 S.E.2d at 556–57; *Dickinson*, 284 N.C. at 585, 201 S.E.2d at 903; *Town of Carrboro*, 261 N.C. App. at 535, 820 S.E.2d at 535. Given that the adverse use of the pathway had ripened into a prescriptive easement, the easement attaches to the land so long as it exists. Even though Defendant's predecessor gave permission to Steve Tharrington and the Community Gun Club to access their land, the prescriptive easement had already been created and existed for twenty years, 1995 through 2015. If such permission in 2016 undermines a twenty-year prescriptive easement, then any servient landowner could simply "give permission" after the easement was created to destroy the easement.

Steve Tharrington used the pathway in a hostile manner well beyond the twenty-year period of 1995 to 2015, as Finding of Fact 17 implicitly tells us he had used the pathway since the 1980s and continued to use it until 2023, the year the complaint was filed. Furthermore, the Community Gun Club, normally via Steve Tharrington, maintained and traveled on the pathway, as indicated by Finding of Fact 23. Finding of Fact 19 explains, per the lease agreement between Plaintiff and the Community Gun Club, the club "was to keep and maintain the pathway and access to the property." Finding of Fact 20, states that, over the years, Steve Tharrington hauled gravel, created ditches, bushhogged the pathway, cut limbs back to allow trucks to access, and laid pipe. Such maintenance supports that Plaintiff's use was under a claim of right as well as open and notorious.

Plaintiff's husband's use also was hostile during his ownership of the Alston Property until he died: Finding of Fact 9 states Plaintiff's husband would travel to the Alston Property several times throughout the years up until his death. His use helps to satisfy the element of use that is adverse, hostile, or under a claim of right. Again, there is no evidence Plaintiff or her husband sought permission to use the pathway nor is there evidence of permission given to Plaintiff or her husband. Also, Hampton used the pathway annually to conduct inspections of the Alston Property and for occasional forestry services, as indicated by Findings of Fact 10 and 22. Such findings contribute to use that is adverse, hostile, or under a claim of right as well as open and notorious.

Defendant also argues the prescriptive easement inadequately describes the location and its extent. However, the trial court made sufficient findings supporting the easement's location and extent. The trial court identified the easement as "the pathway which forms after one travels Roy Tharrington Road until it ends" and "the white line on Plaintiff's Exhibit #4." Also, in Plaintiff's Exhibit 13, there is a map featuring Roy Tharrington Road, the pathway that exists at the end of that road on the Jacox Property, and the Alston Property. This exhibit shows Plaintiff as the property owner, that the property is in Franklin County, and the map was drawn by Hampton. Furthermore, there are two aerial maps, dated 2010 and 2013, showing the property lines surrounding both the Alston and Jacox Properties. Those aerial maps depict a white line as Roy Tharrington Road and there is a visible pathway

extending onto the properties from the end of that road. The record shows other maps of the pathway as well as photographs of the pathway after Defendant blocked access. Also, the trial court's findings indicate Plaintiff used the same pathway since at least the 1950s. Furthermore, the findings concerning the prescriptive easement all treat its extent as a pathway for ingress and egress. These findings demonstrate the prescriptive easement's substantial identity with reasonable specificity.

Defendant next contends the width and scope of the alleged easement are not sufficiently established by the trial court's order and judgment. However, the easement's character and pattern of the users have remained consistent throughout the required period: a pathway to get to the Alston Property. Plaintiff, Plaintiff's husband, Steve Tharrington, Hampton, and others have used the pathway for ingress and egress over many years, since at least the 1950s. Such use of the pathway for ingress and egress purposes defines the scope of the easement. *See Blevins*, 137 N.C. App. at 104, 527 S.E.2d at 672 (citation omitted). Furthermore, the trial court makes many findings that the easement is sufficiently marked as the pathway at the end of Roy Tharrington Road that goes into the Alston Property. As the pathway is used as a typical road, a normal road width for the pathway is reasonable for the prescriptive easement.

### III.  Conclusion

The findings of fact were binding on appeal, and those findings support the conclusions of law. Therefore, we affirm the trial court's order and judgment.

AFFIRMED.

Judges HAMPSON and STADING concur.